KELVINATOR, INC v DEPARTMENT OF TREASURY

GIBSON PRODUCTS CORPORATION v DEPARTMENT OF TREASURY

ARMCO, INC v DEPARTMENT OF TREASURY

Docket Nos. 67472, 67473, 67474. Submitted November 14, 1983, at Lansing.—Decided June 7, 1984. Leave to appeal applied for.

The Michigan Department of Treasury issued assessments for taxes due to petitioners, Kelvinator, Inc., Gibson Products Corporation, and Armco, Inc., following audits of each of the petitioners' single business tax returns for the years 1976 and 1977. Each of the petitioners had agreements with corporations classified for federal income tax purposes as domestic international sales corporations (DISCs) whereby the Michigan corporations paid commissions to the DISCs in exchange for the DISCs acting as selling agents for export items. Neither of the two DISCs involved was a Michigan taxpayer. Pursuant to federal law the commissions paid to a DISC by a domestic supplier are deductible when arriving at the supplier's federal taxable income. Each of the petitioners calculated their tax base for the single business tax on the basis of their federal taxable income, including a deduction for the commissions paid to the DISCs. The Department of Treasury disallowed the deductions of the commissions and required that they be added back to the tax bases of the respective petitioners. The petitioners each sought review of the assessments before the Tax Tribunal. The cases were consolidated before the tribunal, which determined that the respondent, Department of Treasury, properly added back the commissions. The tribunal *sua sponte* granted summary judgment in favor of the respondent. The petitioners appealed, and the appeals were consolidated. *Held:*

1. Section 9(4)(e), MCL 208.9(4)(e), of the Single Business Tax Act requires that deductions taken by a taxpayer because of a

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 71 Am Jur 2d, State and Local Taxation §§ 255, 266, 267.

[2] 71 Am Jur 2d, State and Local Taxation § 260.

[4] 71 Am Jur 2d, State and Local Taxation § 268.

classification as a domestic international sales corporation are to be added back when calculating the taxpayer's tax base for purposes of the single business tax. This was the intent of the Legislature, and a 1977 amendment to the provision did not effect a substantive change but served merely to clarify that intent.

2. The provision does not aply to the DISC itself, but only to the supplier corporations.

3. Addition back of the commissions does not constitute an improper combination of tax bases of the petitioners and the DISCs.

4. Petitioners' claim that the respondent's policy of treating "commission" DISCs differently than "buy/sell" DISCs is without merit, because that alleged policy has not been implemented in a case. The only constitutional inquiry is whether the add-back of commissions violates either the requirement of uniformity of taxation or equal protection. Because of the rational basis for different treatment the classification of "commission" or "buy/sell" DISCs does not violate equal protection or the uniformity requirement.

Affirmed.

1. TAXATION — SINGLE BUSINESS TAX — DOMESTIC INTERNATIONAL SALES CORPORATIONS.

A 1977 amendment to a Single Business Tax Act provision, which provision requires the addition to a taxpayer's tax base of deductions for federal tax purposes of amounts paid to a domestic international sales corporation, was not a substantive change but served only to clarify what was an ambiguous statute; the legislative intent was to have the taxpayer add back the federal tax deductions to its single business tax base (MCL 208.9[4][e]; MSA 7.558[9][4][e]).

2. TAXATION — SINGLE BUSINESS TAX.

The single business tax is not an income tax; it is a method of value added taxation which taxes the incremental value of economic activity by adding the factors of production by which the taxpayer adds value to its goods and services (MCL 208.1 *et seq.;* MSA 7.558[1] *et seq.*).

3. TAXATION — SINGLE BUSINESS TAX — DOMESTIC INTERNATIONAL SALES CORPORATIONS.

The requirement that commissions paid to a domestic international sales corporation are to be added back to a taxpayer's tax base for purposes of the single business tax does not violate the Single Business Tax Act's general proscription against the

combination of tax bases of two or more corporations (MCL 208.78; MSA 7.558[78]).

4. TAXATION — SINGLE BUSINESS TAX — DOMESTIC INTERNATIONAL
   SALES CORPORATIONS.

   The Single Business Tax Act's differing treatment of "commission" domestic international sales corporations and "buy/sell" domestic international sales corporations has a rational basis and is not therefore unconstitutional as a violation of equal protection or of the requirement for uniformity of taxation.

*Law Offices of Benjamin O. Schwendener, Jr.* (by *Benjamin O. Schwendener, Jr.,* and *Richard J. Rastall),* for Kelvinator, Inc., and Gibson Products Corporation.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Peter S. Sheldon* and *Anthony Ilardi, Jr.),* for Armco, Inc.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Terry P. Gomoll,* Assistants Attorney General, for the Department of Treasury.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and G. R. COOK,* JJ.

PER CURIAM. This consolidated appeal (#67473 and #67474 were consolidated with #67472) comes to this Court on an appeal as of right from the October 1, 1982, Tax Tribunal order denying petitioners' motion for summary judgment and *sua sponte* granting such in favor of respondent. The three cases involved here were consolidated below and involve the same issues. The original petitions of each petitioner contested several issues; however, all but the three issues presented in this

---

* Circuit judge, sitting on the Court of Appeals by assignment.

appeal have been settled. Each petitioner herein received an assessment, following an audit, for taxes due for the years 1976 and 1977. The amounts determined by respondent to be due are not relevant to this appeal.

Each petitioner was a Michigan taxpayer during the years 1976 and 1977, the taxable years at issue here. Kelvinator, Inc., and Gibson Products Corporation are wholly owned subsidiaries of White Consolidated Industries, Inc. (White), an Ohio corporation *not* licensed to do business in Michigan in 1976 and 1977. WCI International Sales Corporation (WCI) is a Delaware based subsidiary corporation of White, also not licensed to do business in Michigan and which is classified for federal income tax purposes as a domestic international sales corporation (DISC) pursuant to Subtitle A, Subchapter N, part IV, § 991 *et seq.* of the Internal Revenue Code (26 USC 991 *et seq.).* Although neither petitioner (Kelvinator or Gibson) is the parent of WCI (they are "sister" corporations), each entered into a DISC export franchise agreement with WCI, whereby the former paid commissions to the latter in exchange for the latter's acting as a selling agent for export items.

Pursuant to the provisions of § 994(a) of the Internal Revenue Code (IRC), the commissions paid by petitioners to WCI were fully deductible in arriving at petitioners' federal taxable income for the years in question.

In preparing their single business tax returns for 1976 and 1977, petitioners calculated their tax base on the basis of their federal taxable income (including a deduction for the commissions paid to WCI). In issuing the assessment, respondent disallowed the deduction of the commissions paid to WCI and required that they be added back to the

tax base. The add-back of these commissions is the focus of the instant controversy.

In the petition of Armco, Inc., the petitioner is the parent, sole shareholder of the DISC, Armco Export Sales Corporation (AESC), also a Delaware corporation. As with the case of Kelvinator and Gibson, respondent disallowed, via audit, Armco's deduction of amounts paid to its DISC for commissions. Respondent Department of Treasury construed MCL 208.9(4)(e); MSA 7.558(9)(4)(e) as requiring petitioners to add the commissions paid during these two years back to their respective federal taxable incomes to arrive at their tax bases for purposes of the Michigan Single Business Tax (SBT). None of the DISCs involved herein were Michigan taxpayers during the years in question.

On April 16, 1981, Kelvinator moved for summary judgment pursuant to GCR 1963, 117.2(3), asserting that § 9(4)(e) of the Michigan Single Business Tax Act (the act) was designed to provide a taxable base for *a DISC which did business in Michigan,* not the DISC's parent (Armco) or sister corporation (Kelvinator and Gibson) that happened to do business in this state. Petitioners further argued that "adding back" such commissions would, in effect, force petitioners and their DISCs to report their incomes on a combined basis, contrary to MCL 208.77 and 208.78; MSA 7.558(77) and MSA 7.558(78); that respondent improperly (and administratively) differentiated between buy/sell DISCs (DISCs which buy goods for resale) and commission DISCs (DISCs which are commission agents with no independent property or payroll); and that any ambiguity in the language of the act must be construed in favor of petitioners.

On October 1, 1982, by opinion and order, the Tax Tribunal rejected petitioners' claims and *sua*

*sponte* entered summary judgment in favor of respondent. Petitioners appeal as of right.

The first question is whether § 9(4) of the Single Business Tax Act, in conjunction with § 991 *et seq.* of the Internal Revenue Code, requires appellants to "add back" to their business income (and thus their tax base) commissions paid to a domestic international sales corporation.

The DISC tax mechanism is a complex scheme designed to encourage domestic exporters to increase their exports by granting them preferential tax treatment for setting up a qualified DISC. A DISC within the meaning of § 992(a) of the IRC, 26 USC 992(a), is not subject to income tax, except for transactions to avoid taxation. A commission DISC, as are AESC and WCI, is accomplished by the related corporation's paying of a commission to the DISC for qualified export sales, as provided by IRC § 994. IRC Reg 1.994-1(d)(2) provides that the amount of commission may not exceed the amount of income which could have been earned under IRC § 994(a) had the export items been sold or leased to the DISC, plus certain expenses. The amount of commission as determined by § 994 is allowed as an ordinary and necessary business expense deduction by the related supplier corporation pursuant to IRC § 162. Pursuant to IRC § 995, income earned by the DISC is deemed to be distributed to the related supplier or shareholder as a taxable dividend in an amount approximating 50 percent of the DISC's taxable income. The remainder of about 50 percent of the DISC's taxable income is tax deferred.

IRC Reg 1.991-1(b)(1) provides for the determination of taxable income in general:

"Although a DISC is not subject to tax under subtitle

A of the Code (other than chapter 5 thereof), a DISC's taxable income shall be determined for each taxable year in order to determine, for example, the amount deemed distributed for that taxable year to its shareholders pursuant to § 1.995-2. Except as otherwise provided in the Code and the regulations thereunder, the taxable income of a DISC shall be determined in the same manner as if the DISC were a domestic corporation which had not elected to be treated as a DISC. Thus, for example, a DISC chooses its method of depreciation, inventory method, and annual accounting period in the same manner as if it were a corporation which had not elected to be treated as a DISC. Any elections affecting the determination of taxable income shall be made by the DISC."

The SBT, on the other hand, is levied upon the adjusted tax base of a person subject to the act. MCL 208.31; MSA 7.558(31). The term "tax base" is defined in § 9(1) of the act to mean:

"* * * business income, before apportionment, or allocation as provided in chapter 3, even if zero or negative, subject to the adjustments in subsections (2) to (9)."

The term "business income" is then defined in § 3(3) of the act:

" 'Business income' means federal taxable income, except that for a person other than a corporation it means that part of federal taxable income derived from business activity."

The term "federal taxable income" for single business tax purpose is in turn defined in § 5(3) of the act as follows:

" 'Federal taxable income' means taxable income as defined in section 63 of the internal revenue code."

Section 63 of the IRC provides in part:

"(a) General Rule.—Except as provided in subsection (b), for purposes of this subtitle the term 'taxable income' means gross income, minus the deductions allowed by this chapter, other than the standard deduction allowed by part IV (section 141 and following)."

Finally, § 2(2) of the act provides:

"A term used in this act and not defined differently shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required. A reference in this act to the internal revenue code includes other provisions of the laws of the United States relating to federal income taxes."

The provisions directly at issue here are §§ 9(4)(e) and 9(7)(a) of the act as they existed in taxable years 1976 and 1977. In 1976 § 9(4)(e) provided that, to the extent deducted in arriving at federal taxable income, there should be added to the tax base:

"(e) Any deduction or exclusion by a taxpayer due to its classification as a domestic international sales corporation, western hemisphere trade corporation, China trade act corporation or any like special classification the purpose of which is to reduce or postpone the federal income tax liability. This subsection shall not apply to the special provision of sections 805, 815(c)(2)(A), 809, 823(c), and 824(a) of the internal revenue code." (Emphasis added.)

1977 PA 273 amended the first sentence of § 9(4)(e) to read "due to a classification". Section 2 of 1977 PA 273 provided that such change take effect for tax

years beginning after December 31, 1976. Thus, if that amendment occasioned a substantive change, a distinction must be made between taxable years 1976 and 1977. As to § 9(7)(a), this provision is unchanged and reads as follows:

"(7) Deduct, to the extent included in arriving at federal taxable income:
"(a) Dividends received or deemed received, including the foreign dividend gross-up provided for in the internal revenue code."

At issue here is whether these provisions of the SBT, when read together with the purposes of the IRC DISC provisions and the nature of the SBT, *i.e.,* its function as a value added tax, evidence an intent to require the related supplier corporation in a DISC relationship to "add back" commissions paid by it and deducted from federal taxable income pursuant to IRC § 162. This is an issue of first impression in this state, which we conclude was properly resolved by the Tax Tribunal.

The starting point is the language of § 9(4)(e). Respondent argues that the amendment did not effectuate any change but, rather, served to clarify the provision. Armco is in accord with respondent that the amendment brought no change, but argues that, because it initially read "its classification", the change to "a classification" is irrelevant. Finally, Kelvinator and Gibson argue that because the 1977 amendment was not applied retroactively, it was not a mere clarifying amendment. We find respondent's position more persuasive.

First, as pointed out by respondent, the tribunal has previously ruled that the the amendment wrought by 1977 PA 273 was not substantive but only clarifying in nature. *E I Dupont DeNemours*

*& Co v Michigan Dep't of Treasury,* MTT Docket No. 48763 (entered July 27, 1982) and *Leco Corp v Michigan Dep't of Treasury,* MTT Docket No. 48720 (entered September 9, 1982).

Most important, however, is not the "a" or "its", but, as respondent argues, the language in 9(4)(e) modifying "classification" and reading, "the purpose of which is to reduce or postpone the federal income tax liability". When one looks to the nature and purpose of the DISC provisions of the IRC, it becomes apparent that the 1977 amendment served to clarify an ambiguous statute and make "plain what the legislative intent had been all along", not to alter that intent. *Detroit Edison Co v Janosz,* 350 Mich 606, 614; 87 NW2d 126 (1957). Accord, *American Legion Memorial Home Ass'n of Grand Rapids v Grand Rapids,* 118 Mich App 700, 709-710; 325 NW2d 543 (1982).

At first blush, the former language of § 9(4)(e) appears to address a DISC as the taxpayer, since it read "any deduction * * * by a taxpayer due to *its* classification". But such an interpretation does not mesh with the above noted language concerning a classification whose purpose is to reduce or postpone federal income tax liability.

The DISC provisions of the IRC are not designed to reduce *DISC* tax liability, although these provisions operate in such a manner that the DISC is not subject to tax liability. The former statement is true because the DISC exists solely to accommodate the related supplier corporation. Indeed, most DISCs are mere paper entities, without property, payroll, or personnel. In this connection, IRC Reg 1.994-1(a)(2) provides that the application of IRC §§ 994(a)(1) or (2), which deal with the amount of the commission (or sale price) that may be paid to the DISC, "does not depend on the extent to which

the DISC performs substantial economic functions
* * *". The reason for creating a separate entity
to accomplish the goals of encouraging exports by
domestic producers is twofold. First, a separate
entity with a separate method of accounting, as
provided in IRC Reg 1.991-1(b)(2), is much easier to
monitor inasmuch as the export receipts and in-
come of the DISC are kept separately. Moreover,
direct tax subsidies, *i.e.,* exemptions, would violate
the General Agreement on Tariffs and Trade
(GATT), whereas the indirect method of setting up
a DISC circumvents this obstacle. See Considine,
*The DISC Legislation: An Evaluation,* 7 NYU
Journal of International Law and Politics 217, 225
(1974).

Thus, the DISC provisions are not intended to
"reduce or postpone" tax liability for the DISC.
Rather, the DISC is the instrumentality for doing
so for the related supplier corporation in an effort
to create an incentive to export domestically pro-
duced items instead of setting up foreign subsidiar-
ies. In light of this purpose, the ambiguity in
§ 9(4)(e) is apparent. The 1977 amendment, accord-
ingly, should be construed as clarifying "what the
legislative intent had been all along", which was
to have petitioners here "add back" the commis-
sions deducted by them on their federal income
tax returns. Furthermore, although the deductions
for commissions paid to the DISCs were techni-
cally permitted under IRC § 162, we nevertheless
believe that it was made "due to classification as a
DISC" within the meaning of § 9(4)(e).

Petitioners also assert that § 9(4)(e) applies to
the DISC itself because the other specifically enu-
merated taxpayers therein (western hemisphere
trade corporations and China trade act corpora-
tions) were themselves entitled to special deduc-

tions, and, accordingly, it must be to the DISC itself that reference is made in that section. But such analysis adds nothing. Western hemisphere trade corporations and China trade act corporations do not lend themselves to comparison with DISCs. The provisions relating to the former entities did not provide for the creation of a subsidiary or separate corporation. There is no question as to who receives the deduction. The simple answer to placing DISCs in the same provision as these other two types of corporations is the above noted modifying language, "or any like special classification the purpose of which is to reduce or postpone the federal income tax liability". As previously discussed, while the DISC is not subject to federal tax despite its being permitted to earn taxable income, the true beneficiary is the supplier corporation that receives a limited tax shelter and deferral. A DISC exists solely through legislative grace.

The crucial point here, however, is not the intent of Congress in enacting IRC §§ 991 *et seq.,* but the intent of the Michigan Legislature in enacting the SBT. That respondent's interpretation of § 9(4)(e) is correct is further supported by the nature of the SBT. The SBT is an additive method of value added taxation which taxes the incremental value of the economic activity by adding the factors of production by which the taxpayer adds value to its goods and services. It is not a pure value added tax in the European sense, since it uses federal taxable income as a base and then adjusts that base by the provisions of §§ 9(2) through (9). The SBT is *not* an income tax. See Haughey, *The Economic Logic of the Single Business Tax,* 22 Wayne Law Review 1017 (1976). Since DISC income and commissions are not dependent upon "the extent to which the DISC performs

substantial economic functions", IRC Reg 1.994-1(a)(2), the value added to the goods by the DISC is neither reflected in the amount of commission nor readily calculable, and is, in any event, minimal. Therefore, the value added to the product and reflected in the commissions paid to the DISC is more properly "added back" to the tax base of the related supplier corporation.

Furthermore, § 9(7)(a) appears to exclude from the tax base that portion of the DISC income "deemed received" as a dividend to petitioners. We have not been able to glean from the record whether this has been done, but petitioners do not argue otherwise, and, in fact, intimate that such was done. They argue, however, that § 9(7)(a) indicates that all the activities and income related to the DISC for federal tax purposes should be excluded from consideration here in that they should be attributed solely to the DISC. We find to the contrary that the deduction of dividend income from a DISC via § 9(7)(a) indicates that commissions paid and deducted should be included under § 9(4)(e).

It is simply an economic fiction, *viz.,* a fiction created by *federal* income tax policy, that the amount of commission or taxable income earned by the DISC represents value added to the product by the DISC, and, therefore, must be allocated to the DISC alone. These amounts admittedly have no relation to the economic activity of the DISC. The dividends deducted under § 9(7)(a) and the tax deferred portion of the DISC's income that exceed the amount of the commission may be fairly said to approximate the DISC's activity, if indeed the DISC is more than a paper corporation. Thus, the portion of export profits initially deducted for commissions paid to the DISC should be included

in the tax base before apportionment. See *Bunge Corp v Comm'r of Revenue,* 305 NW2d 779 (Minn, 1981).

In any event the amendment to § 9(4)(e), which was in effect for taxable year 1977, evidences an intent to include the deductions allowed due to "a" classification as a DISC, and, thus, petitioners would be required to add back such deductions for 1977.

Petitioners' next claim is that adding back the commissions to their respective tax bases would violate §§ 77 and 78 of the act as an improper combination of tax bases.

Section 77 provides that consolidated or combined returns of affiliated groups may be required or permitted only where all members of the affiliated group are Michigan taxpayers, where intercorporate transactions of a substantial nature take place, and where the business activities of each member are subject to the same method of apportionment.

Section 78 provides:

"Except as expressly provided in section 77, a provision of this act shall not be construed to permit or require the filing of a consolidated or combined return or a consolidation or combination of the tax base or apportionment factors of 2 or more corporations."

Section 77 is not applicable here. Thus, it must be determined whether, as petitioners assert, the tribunal's ruling effectively combines their respective tax bases with those of their DISCs.

In the petitions of Kelvinator and Gibson, respondent correctly points out that they are not the only parties to the DISC Export Franchise Agreement. Hence, the commissions involved herein do not represent all commissions paid to WCI. There-

fore, as a factual matter, the tribunal's ruling does not represent an unlawful combination of tax bases.

As to the petition of Armco, Armco enjoys a 100 percent interest in AESC. However, commissions do not constitute the only source of income for a DISC, as respondent points out. DISCs may realize income on qualified dividends, interest on producers loans, and capital and other gains. See IRC § 995(b)(1) and IRC Reg 1.995-2(a). More importantly, "tax base" under the act has the taxpayer's business income *as its starting point only,* with business income meaning federal taxable income, which in turn is defined as gross income minus deductions. Also, the commissions paid do not include all allowable business expense deductions of the DISC.

Further, the tax base is adjusted by the provisions of subsections 9(2) through 9(9). Thus, as the Tax Tribunal ruled below, a taxpayer's tax base does not equal taxable income or, here, commissions, even assuming the DISC's taxable income consists solely of the commissions paid to it by petitioners. This is true because the SBT is *not* an income tax and a taxpayer's tax base is not limited to its income. The SBT is measured by what the taxpayer puts into the economy, not what it takes out, and, thus, a taxpayer may incur SBT liability without having any income. See *Stockler v Dep't of Treasury,* 75 Mich App 640, 651-652; 255 NW2d 718, *lv den* 402 Mich 802 (1977). The tribunal's ruling did not violate § 78.

Finally, petitioners claim that the treatment of "commission DISCs" differently than "buy/sell DISCs" violates equal protection and the tax uniformity provision of the Michigan Constitution.

The relevant portion of Const 1963, art 9, § 3 provides:

"The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law. * * * The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates."

Petitioners' position is that respondent improperly treats buy/sell DISCs as "persons" within the meaning of § 6(1) of the act and imposes the SBT on such DISCs, allowing income earned by them to be regarded as DISC income where such DISCs have Michigan business activity. Conversely, petitioners posit, commission DISCs are treated as nonpersons, with their income combined with that of the person paying the commission. The department's position in this regard is allegedly set forth in its *Single Business Tax Questions and Answers,* vol 5, no 3 (CCH State Tax Rep, Mich, ¶ 19-005, June 15, 1976) as follows:

"How will a Domestic International Sales Corporation be treated under the SBT act?
"A. The taxability of the DISC will be the same as any other corporation if the DISC has property or payroll.
"If the DISC is considered a commission DISC without property and payroll, the business activity of the DISC will be considered the business activity of the parent company."

The tribunal ruled that, these statements notwithstanding, respondent has not arbitrarily treated buy/sell DISCs differently from commission DISCs, "to the illegal detriment of Michigan taxpayers who deal with commission DISCs". This issue poses certain problems of justiciability because petitioners' respective DISCs were not Michi-

gan taxpayers for the years in question, and thus their "business activities" were not combined with or considered as that of the parent; that is, WCI and AESC were not corporations qualifying as Michigan taxpayers, but then were treated as nonpersons while other buy/sell DISCs were considered "persons". The instant case involves only the add-back of previously deducted commissions.

Moreover, the tribunal noted that a representative of respondent attested by affidavit that the distinction was not between "commission" and "buy/sell" DISCs, but between DISCs with payroll and property and those without such, and that any DISC which received commissions (and both types of DISCs could) would be required to add such back to its tax base. Since this case does not deal (and it appears no case as yet has dealt) with this problem, it is pure speculation at this point as to what respondent would do in that situation. Although the order appealed from was an order of summary judgment, and determinig that respondent *would* do things in such a situation in the manner described above may not normally be proper on summary judgment, there is no basis here for determining whether *business activities* could properly be combined as stated in the Questions and Answers above, or whether commission DISCs could be treated as "nonpersons". Review of this claim is not possible because petitioners' claim of error is based not on the statute, but on the previously stated *policy position* of respondent. Thus, until such time as that policy is implemented in a concrete case (especially where respondent asserts that petitioners have misstated that policy), the issue here should be confined to the add-back of commissions. In this context, the only possible constitutional inquiry is whether

there is a rational basis for the add-back of commissions while perhaps other components of DISC income are not included in the supplier corporation's tax base.

Section 9(4)(e) requires an addition to the tax case for any *deduction* or *exclusion* by a taxpayer due to its classification as a DISC. Different treatment of commissions from a buy/sell DISC's income has a rational basis for several reasons. First, commissions paid to a DISC and deducted by the supplier corporation fall within the clear meaning of § 9(4)(e), since they are deducted by the taxpayer. On the other hand, supplier corporations that sell goods to their DISCs receive income therefrom in the manner prescribed in IRC Reg 1.995-2(a). There is no obvious deduction for an ordinary and necessary business expense, such as a commission, in the buy/sell situation. Second, and most important, buy/sell DISCs necessarily engage in more economic activity, thereby adding more value to the product themselves. That their income is not added back to the supplier corporation's tax base reflects economic reality. Finally, even if petitioners' assertion is true, that the IRC treats all DISCs identically in all respects, such is not determinative of Michigan Single Business Tax policy. Indeed, the nature of the Michigan value added tax has been attributed to the fact that Michigan is a sub-economy without the means to control the flow of imports and exports. See Haughey, *Economic Logic, supra,* p 1025.

In sum, there is no improper classification which violates the uniformity requirements of art 9, § 3 or the Equal Protection Clause under the facts of the instant case. For purposes of the SBT, a value added tax, payment of a selling agent's commission and the sale of goods represent completely

different activities. Whether respondent could properly consider a commission DISC's business activity as that of the parent or treat a commission DISC operating in Michigan as a nonperson while simultaneously treating buy/sell DISCs as separate persons with separate business activities is not at issue here. In any event, the nature of the department's policy embodied in the Question and Answer reproduced above seems to indicate respondent is correct in its assertion that petitioners have misstated its impact. Respondent does not refer to treating one type as a person and the other as a nonperson. Nor is there ostensibly a distinction between the buy/sell DISCs and commission DISCs.

For the foregoing reasons, we affirm the findings of the Tax Tribunal. No costs.