MID AMERICA MANAGEMENT CORPORATION v DEPARTMENT
OF TREASURY

Docket No. 85245. Submitted March 12, 1986, at Lansing. Decided
July 21, 1986.

The Department of Treasury issued a single business tax defi-
ciency assessment in the amount of $21,991.08, plus interest,
against Mid America Management Corporation for the taxable
years ending October 31, 1977, 1978, and 1979. Mid America is
a corporate property manager involved primarily in the man-
agement of apartment complexes and shopping centers. For tax
purposes Mid America divided its employees into two groups:
(1) office and management personnel and (2) "on-site" employ-
ees of the clients being served by Mid America. Mid America
took the position that on-site employees are employees of the
individual project owners and that compensation paid to those
employees is includable in the tax base of the project owners,
not that of Mid America. The Department of Treasury took the
position that Mid America is the employer of the on-site
employees because it controls the day-to-day operation of the
businesses and controls the payroll for all employees. The
department therefore determined that the entire compensation
paid all employees should be includable in the tax base of Mid
America. Mid America filed a petition for review of the assess-
ment in the Michigan Tax Tribunal. Following a hearing, the
hearing officer issued a proposed judgment affirming the assess-
ment in its entirety. Mid America then filed exceptions and
written objections to the proposed judgment. The Tax Tribunal,
upon review of the proposed judgment and the record, reversed

REFERENCES

Am Jur 2d, Appeal and Error §§ 545 et seq.

Am Jur 2d, Evidence §§ 1016 et seq.

Am Jur 2d, Master and Servant §§ 1-7, 14-70.

What constitutes employer-employee relationship for purposes of
federal income tax withholding. 51 ALR Fed 59.

Comment note on the parole evidence rule and the admissibility of
extrinsic evidence to establish or clarify ambiguity in written
contract. 40 ALR3d 1384.

See also the annotations in the ALR3d/4th Quick Index under
Contracts; Evidence; Master and Servant.

the decision of the hearing officer and cancelled the assessment, holding that the employment relationship should be determined by the traditional common-law tests rather than through application of definitions and technical rules found in federal regulations for determining whether an employer-employee relationship existed. The Department of Treasury appealed, contending that the Tax Tribunal erred by giving consideration to parol evidence which contradicted the clear and unambiguous language of the managment agreements and by impermissibly excluding from the single business tax base a significant and essential part of the activity, i.e., the compensation paid to a select number of employees engaged in the business which is being taxed. *Held:*

1. Parol evidence was admissible to determine the threshold issue of whether the parties intended the written management agreements to embody the complete agreement on the matter of hiring, firing, and supervision of on-site employees. The testimony of the owner of Mid America and of one of the clients that the project owners had ultimate control in the event of a conflict between Mid America and a project owner was credible, and in fact that testimony was unrebutted. The finding that the project owners were the common-law employers of the on-site employees is supported by competent, material, and substantial evidence.

2. Compensation paid by Mid America to on-site employees, which was in turn reimbursed by the project owners, should not be included in Mid America's adjusted tax base for purposes of the Single Business Tax Act. The project owners were clearly the common-law employers of the on-site employees, and an exception in a federal statute defining "employer" does not apply to the circumstances in this case.

3. The argument advanced by the Department of Treasury that the management agreements in this case were executed with the purpose of improperly shifting the tax burden from Mid America to the project owners is rejected. That argument is not supported by the facts.

4. The Tax Tribunal's decision to cancel the deficiency assessment was authorized by law and is supported by competent, material, and substantial evidence.

Affirmed.

1. MASTER AND SERVANT — EMPLOYER-EMPLOYEE RELATIONSHIP —
    COMMON-LAW TEST.

The common-law test for determining whether an employer-employee relationship exists focuses primarily on the right to

direct and control the manner and method of providing a
service, although other factors may be considered; generally the
relationship of employer and employee exists when the person
for whom services are performed has the right to control and
direct the individual who performs the service, not only as to
the result to be accomplished by the work but also as to the
details and means by which that result is accomplished; if an
individual is subject to the control or direction of another
merely as to the result to be accomplished by the work and not
as to the means and methods for accomplishing the result, he is
not an employee.

2. CONTRACTS — EVIDENCE — PAROL EVIDENCE RULE.
      Extrinsic evidence of antecedent or contemporaneous understand-
ings and negotiations is not admissible for the purposes of
varying or contradicting a written contract wherein two parties
have entered into a contract and have expressed it in a writing
which they both assented to as being the complete and accurate
integration of that contract.

3. APPEAL — EVIDENCE — PAROL EVIDENCE RULE — PRESERVING
      QUESTION.
      An objection ordinarily must be raised to preserve appellate
review of evidentiary questions; however, because the parol
evidence rule is a rule of substantive law as well as a rule of
evidence, its applicability may be considered even if the parol
evidence is admitted in evidence without objection.

4. CONTRACTS — EVIDENCE — PAROL EVIDENCE RULE.
      The sine qua non of the parol evidence rule is a finding that the
parties intended the writing to be a complete expression of
their agreement as to the matters covered; extrinsic evidence is
admissible to resolve this threshold question.

5. CONTRACTS — EVIDENCE — PAROL EVIDENCE RULE.
      The parol evidence rule does not preclude admitting extrinsic
evidence to resolve an ambiguity which is proven to exist in a
written agreement and, thereafter, to determine the actual
intent of the parties.

6. CONTRACTS — JUDICIAL CONSTRUCTION — FACT QUESTIONS.
      Construction of a contract is ordinarily a question of law for the
court; however, where the language used is ambiguous or
incomplete, or the circumstances are unusual, the substance of
the parties' agreement is a question of fact for the jury.

7. TAXATION — TAX TRIBUNAL — APPEAL.
      Review of tax tribunal decisions by the Court of Appeals is

limited to determining whether they are authorized by law and whether the factual findings are supported by competent, material, and substantial evidence on the whole record (Const 1963, art 6, § 28).

8. Evidence — Substantial Evidence.

"Substantial evidence" is more than a mere scintilla of evidence, but may be substantially less than the preponderance of evidence necessary in most civil cases.

9. Taxation — Single Business Tax — Value Added Tax.

The Single Business Tax Act imposes a specific tax on the adjusted tax base of every person with business income in the state; the single business tax is best understood as a value added tax, although it is not a pure value added tax (MCL 208.1 et seq.; MSA 7.558[1] et seq.).

10. Taxation — Master and Servant.

An individual is an employee for federal employment tax purposes if he has the status of an employee under the usual common-law rules applicable in determining the employee-employer relationship.

11. Taxation — Master and Servant — "Employee" — "Employer".

A person from whom an employer is required to withhold for federal income tax purposes and a person required to withhold for federal income tax purposes shall prima facie be deemed an "employee" and "employer" respectively for single business tax purposes (MCL 208.5; MSA 7.558[5]).

12. Statutes — Judicial Construction.

Interpretation and construction of the terms of a statute which is unambiguous on its face is unnecessary; if an ambiguity exists, the courts must give effect to the intent of the Legislature, looking to the object of the statute and applying a reasonable construction which best accomplishes the statute's purpose.

13. Evidence — Presumptions — Burden of Proof.

A conclusive presumption in a statute cannot be rebutted by testimony; by contrast, a rebuttable presumption makes out a prima facie case and casts the burden of proof on the opposing party.

*Carson, Fischer & Potts* (by *Robert M. Carson, William C. Edmunds,* and *Robert A. Weisberg*), for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Thomas J. Kenney,* Assistant Attorneys General, for respondent.

Before: MacKenzie, P.J., and Allen and G. W. Crockett III,* JJ.

Allen, J. Respondent Department of Treasury appeals as of right from a May 16, 1985, decision and order of the Michigan Tax Tribunal canceling a single business tax assessment of $21,991.08, plus interest, for the taxable years ending October 31, 1977, 1978 and 1979. The basis of the alleged deficiency was the taxpayer's failure to include in its tax base the compensation which the taxpayer paid to various "on site" employees. We affirm.

### FACTS

Following receipt of the deficiency assessment, Mid America, on June 21, 1982, filed a petition for review by the Michigan Tax Tribunal. A hearing was held before hearing officer Michele Halloran on January 23, 1984, at which the following facts were presented. Petitioner is a corporate property manager involved primarily in the management of apartment complexes and shopping centers. Clients, hereinafter referred to as project owners, include individual property owners, syndicators, and developers in Michigan and Kentucky. Clients also include nonprofit organizations which are federally subsidized through the United States Department of Housing and Urban Development (HUD). Petitioner is one hundred percent owned by Joseph Schmitt, Jr., and his wife. Joseph Schmitt,

---

* Recorder's court judge, sitting on the Court of Appeals by assignment.

Jr., has an ownership interest in several of petitioner's clients. The principal office is in the City of Flint. On-site employees, in most instances, live in the project owned by the project owner and generally include the resident manager and grounds and maintenance staff.

For tax purposes petitioner divided its employees into two groups: (1) office and management personnel and (2) on-site employees of the clients being served by petitioner. It was petitioner's position that on-site employees are the employees of the project owner; therefore, the compensation paid to the on-site employees is includable in the tax base of the project owner. Mid America Management offered as evidence in support of its position (1) the management agreement; (2) the testimony of Mr. Schmitt (President of Mid America Management) and Mr. Dietz (a project owner) to the effect that the owner retains the right to hire, fire and supervise the on-site employees, and that on occasion this right is exercised; and (3) the corporate treasurer's testimony, which reveals that the project owner reimbursed the management company for the payroll.

The department, on the other hand, took the position that Mid America is the employer of the on-site employees because Mid America controls the day-to-day operation of the business, i.e., the hiring, firing and supervising of all employees, and it controls the payroll for all employees. Therefore, according to the department, the entire compensation paid should be includable in the tax base of Mid America.

Another fact presented at the hearing and pertinent to the issue before us is that one of the project owners, Paul Dietz, testified that the single business tax returns for his project were always filed with on-site employees being treated as em-

ployees of the project. No other proof on this point was presented at the hearing.

Other witnesses testified that clients engaged petitioner's services by entering into one of two standard management agreements. One agreement was used for federally subsidized projects and contained detailed terms which are required and approved by HUD. The standard management agreement for nonsubsidized projects contained more general language, but under both agreements petitioners had authority to hire, discharge, and supervise on-site employees. Mid America was also to perform all payroll functions, subject to the project owner's obligation to reimburse petitioner for all salaries, wages, related payroll taxes and fringe benefits. Mid America's fee for its management services is computed at four percent to six percent of gross collections, which includes rental and other miscellaneous income of the project.

Petitioner's primary duties as interpreted by its president, Joseph Schmitt, Jr., include (1) maximizing a project's income, (2) operating the project within the budget approved by the project owner, (3) hiring and training the resident manager of the project, and (4) insuring that the project is physically maintained, cosmetically appealing and, consequently, marketable. Testimony concerning the respective powers and duties of petitioner and project owners vis-à-vis on-site employees is summarized below.

*Management Agreement Provisions:* The management agreement for federally subsidized projects provides that (1) all on-site employees will be employees of the project owner and not petitioner, (2) on-site employees will be hired, paid, discharged, and supervised through petitioner, acting as the project owner's agent, (3) all compensation paid to on-site managerial and maintenance em-

ployees will be reimbursed to petitioner, as agent
of the project owner, (4) compensation for the on-
site manager and maintenance employees will be
as prescribed in the management plan, and (5) the
compensation for bookkeeping, clerical, and other
managerial personnel will be within the sole dis-
cretion of petitioner. Thus, the management agree-
ment for subsidized projects clearly delineates the
responsibilities of petitioner in relation to on-site
employees. The management agreement for non-
subsidized projects contains similar responsibili-
ties, but is in substantially less detail.

*Procedures for Hiring and Firing On-Site Em-
ployees:* Petitioner has its own "property manage-
ment department." Each property manager in that
department is responsible for seven or eight proj-
ects. The property manager hires and trains the
on-site resident manager. The project owner also
has authority to hire, fire and supervise the resi-
dent manager and in some cases has actually
chosen to do so. Paul Dietz, for instance, stated
that he actively participated in hiring and termi-
nation decisions in his capacity as a project owner.
If a conflict over which decision to make occurred,
Dietz's decision controlled. Petitioner would then
act as Dietz's agent and hire and fire as he in-
structed.

All other on-site employees are hired by the
resident manager. Petitioner's written manage-
ment and employment policies, including its fringe
benefit and pay scales, are brought into the proj-
ect. Some economy-of-scale benefits are obtained by
this arrangement. In particular, insurance policies
are centrally obtained by petitioner and then reim-
bursed by the project owners at the lower pre-
mium rates. If a project owner objects to petition-
er's policies, then the project owner's decision
controls the matter. Basically, petitioner tailors its

management plan to meet the project owner's objective.

*Pertinent Financial Procedures:* A separate banking account is maintained by petitioner for each project. The resident manager deposits rental and other miscellaneous receipts from the project into the operating account. A single payroll clearing account titled "Mid America Management Payroll Account" is maintained by petitioner for all payroll and related expenses, including the payroll for petitioner's corporate employees and the on-site employees of each project. For payroll purposes, petitioner's corporate employees are essentially treated as employees of a corporate "project."

Each employee prepares a time sheet, which is then signed by the employee and the employee's supervisor. In the case of on-site employees, the resident manager usually approves the time sheet. Time sheets are submitted in batches, by project, to payroll clerks at petitioner's administrative office. Payroll clerks then summarize the information from the time sheets onto a work sheet by expense class code. The information is then given to an independent computer service which produces a payroll report by project and prints the employees' paychecks. All checks are drawn against the single clearing account covering all projects mentioned above.

The paychecks and payroll are then submitted to petitioner and signed by petitioner's treasurer. Upon their receipt at the various projects, the project resident manager distributes the checks to the on-site employees. At the same time, petitioner also prepares separate checks drawn on each project's bank account for the total amount of checks issued for each project. The checks so drawn on each project's operating account are signed by

petitioner's treasurer and deposited in the single clearing account. The net effect is to reimburse the clearing account for the total sums paid to each project's employees. Thus, all payroll and related expenses are paid from the project's separate bank account. However, the reimbursement procedure also results in each project's payment of salaries and wages being reported to the federal government on federal forms 940 and 941 as compensation paid by Mid America rather than by the project.

On February 15, 1985, the hearing officer issued a proposed judgment affirming the assessment in its entirety. The proposed judgment found that although the project owner was the common-law employer of on-site employees, Mid America was the statutory employer, since it possessed control over the payment of wages to the on-site employees.

> In the instant case, despite the fact that the individual project owners fall within the ambit of the federal regulation's definition of common law employer, Mid America nevertheless must be deemed the statutory employer of the on-site workers under the prevailing exception stated in 26 USC 3401(d)(1) (and consequently under the applicable state definition as well), for the reason that it possessed sole control of the payment of these persons' wages. As the employer of the on-site personnel, the taxpayer thus was required to include compensation paid to these persons—its employees—within its tax base under sec 9(5) of the single business tax act.

Mid America filed exceptions and written objections with the Tax Tribunal. The tribunal, upon review of the proposed judgment and the record, reversed the decision of the hearing officer and cancelled the assessment. The tribunal held that

the employment relationship should be determined by the traditional common-law tests rather than under 26 USC 3401(d)(1).

We also agree with the conclusion in the Proposed Judgment that the project owners retained control and direction over the on-site employees and that these employees, therefore, were the common law employees of the project owner. However, we disagree with the Hearing Officer's conclusion that the definition of "employee" in 26 USC 3401(c) was of little assistance to adjudge Petitioner's liability. Contrary to the assertions by the Department of Treasury during this case, the policy stated by the Department of Treasury in its own "Michigan Single Business Tax Questions & Answers", Volume I-XIII and Bulletins, C-8015 (Rev. 5/82), Bulletin 1981-1, "Compensation", the employment relationship is to be ascertained with reference to the traditional common law tests, and not according to the more technical rules established in 26 USC 3401(d):

* * *

In conclusion, since the purpose of the Act is to impose a tax upon economic activity in the state (*Kelvinator v Department of Treasury,* 136 Mich App 218 [355 NW2d 889], 1984), the entity that is responsible for the tax should be the entity that benefitted from such economic activity. The value added to the economy can only originate from the true common law employer. The project owner was the true beneficiary of the efforts of the on-site employees. Any value added to the economy as a result of the efforts of these employees must be taxed to the owners under the Single Business Tax Act.

ISSUES

On appeal the department contends that the tribunal erred in two controlling respects: (1) by giving considerations to parol evidence which con-

tradicted the clear and unambiguous language of the management agreement, and (2) by impermissibly excluding from the single business tax base a significant and essential part of the business activity, viz.: the compensation paid to a select number of employees engaged in the business which is being taxed. In rebuttal, Mid America argues (1) that the language of the management agreement was not so clear and unambiguous as to make parol evidence inadmissible, and (2) under criteria set forth in Treas Reg 31.3401(c)-1(b), on-site employees are the common-law employees of the project owners, not of Mid America, and as such are expressly excluded from Mid America's tax base.[1]

DISPOSITION

I

On the threshold issue of whether the on-site employees were the employees of Mid America or of the project owners, the hearing officer found that the project owners were the common-law employers because the credible and unrebutted testimony of petitioner's president, Joseph Schmitt, Jr., and project owner, Paul Dietz, showed that, while the management agreements did not per se reserve to the project owners the right to hire, discharge, and supervise on-site employees, in actual practice *the right to direct and control* was retained by the project owners and at times was exercised. The hearing officer relied on the general common-law principles embodied in

[1] The Single Business Tax requires a business entity to include in its tax base "compensation" paid its "employees." MCL 208.9(5); MSA 7.558(9)(5) and MCL 208.4(3); MSA 7.558(4)(3). The term "employee is defined by reference to the definition of employee under § 3401(c) of the Internal Revenue Code and the regulations issued thereunder.

the federal treasury regulation to determine whether a common-law employer-employee relationship existed. In 1981, the department adopted federal regulation 26 CFR 31.3401(c)-1 and (d)-1 for determining whether an employer-employee relationship existed. That regulation provides:

> (b) Generally the relationship of employer and employee exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is not an employee. [26 CFR 31.3401(c)-1.]

This common-law test primarily focuses on the right to direct and control the manner and method of providing a service, although other factors may be considered. *Marvel v United States,* 719 F2d 1507 (CA 10, 1983). The department argues that under the parol evidence rule the hearing officer was precluded from giving consideration to the testimony of Schmitt and Dietz. Under the parol

evidence rule, when two parties have reduced to writing that which they agree is a complete and accurate statement of their agreement, extrinsic evidence of antecedent and contemporaneous understandings is inadmissible for the purpose of varying or contradicting the writing. *Van Pembrook v Zero Mfg Co,*146 Mich App 87, 97-98; 380 NW2d 60 (1985).

No objection was raised by the department to the testimony of Schmitt and Dietz and, consequently, petitioner contends the issue is not preserved. Ordinarily, an objection must be raised to preserve appellate review of evidentiary questions. *City of Warren v Maccabees Mutual Life Ins Co,* 83 Mich App 310, 319; 268 NW2d 390 (1978), lv den 405 Mich 845 (1979). Because the parol evidence rule is a rule of substantive law as well as a rule of evidence, *Salzman v Maldaver,* 315 Mich 403, 412; 24 NW2d 161 (1946), its applicability may be considered even if the parol testimony is admitted in evidence without objection. Accordingly, we address the issue on its merits.

The sine qua non of the parol evidence rule is a finding that the parties intended the writing to be a complete expression of their agreement as to the matters covered. Extrinsic evidence is admissible to resolve this threshold question. *NAG Enterprises, Inc v All State Industries, Inc,* 407 Mich 407; 285 NW2d 770 (1979). Furthermore, the rule does not preclude admitting extrinsic evidence to resolve an ambiguity which is proven to exist and, thereafter, to determine the actual intent of the parties. *Goodwin, Inc v Orson E Coe Pontiac, Inc,* 392 Mich 195; 220 NW2d 664 (1974). This is consistent with the rule that contract construction is ordinarily a question of law for the court. When the language is ambiguous or incomplete, or circumstances unusual, then the substance of the

parties' agreement is a factual question. *Zinchook v Turkewycz,* 128 Mich App 513; 340 NW2d 844 (1983).

Admittedly paragraph 3(c) of the management agreement clearly and unambiguously gives Mid America the authority to hire, fire, and supervise on-site employees at the various complexes. The problem is, the management agreement does not, either expressly or by implication, confer *exclusive* authority on management to hire, discharge and supervise. Left in the air is whether project owners had the same power and, more particularly, if a conflict arose, who prevailed. Therefore, parol evidence was admissible to determine the threshold issue of whether the parties intended the written agreement to embody the complete agreement on the matter of hiring, firing and supervision of on-site employees. The hearing officer found the testimony of Schmitt and Dietz to be credible. Indeed, their testimony that the project owners had ultimate control in the event of a conflict between Mid America and the project owner was unrebutted.

This Court's review of Tax Tribunal decisions is limited to determining whether they are authorized by law and whether the factual findings are supported by competent, material and substantial evidence on the whole record. *MCI Telecommunications Corp v Dep't of Treasury,* 136 Mich App 28; 355 NW2d 627 (1984), lv den 422 Mich 883 (1985); Const 1963, art 6, § 28. "Substantial evidence" must be more than a scintilla of evidence, although it may be substantially less than the preponderance of evidence necessary in most civil cases. *Holy Spirit Ass'n for the Unification of World Christianity v Dep't of Treasury,* 131 Mich App 743; 347 NW2d 707 (1984). In view of the fact that the testimony was found credible by the

hearing officer and that no testimony in rebuttal was presented, we also hold that the hearing officer's finding that the project owner was the common-law employer is supported by competent, material and substantial evidence.

## II

Our determination that petitioner was not the common-law employer of the project owner's on-site employees does not in itself mean that the deficiency assessment of $28,068.64 was properly canceled. Still to be decided is the main issue of whether the compensation paid to the on-site employees by petitioner and in turn reimbursed by the project owners was properly included in petitioner's adjusted tax base for purposes of the Single Business Tax Act (SBTA). Resolution of this issue first requires an explanation of the basic principles of the SBTA.

The SBTA, MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.,* imposes a specific tax on the adjusted tax base of every person with business income in this state. MCL 208.31(1); MSA 7.558(31)(1). It is best understood as a value added tax, although it is not a pure value added tax. *Town & Country Dodge, Inc v Dep't of Treasury,* 420 Mich 226, 234; 362 NW2d 618 (1984). "Adjusted tax base" means business income, subject to certain adjustments as described in MCL 208.9; MSA 7.558(9). Business income is defined as federal taxable income. MCL 208.3(3); MSA 7.558(3)(3). One of the adjustments to the tax base requires the taxpayer to add to taxable income the compensation paid its employees. MCL 208.9(5); MSA 7.558(9)(5); *Jones & Laughlin Steel Corp v Dep't of Treasury,* 145 Mich App 405, 407; 377 NW2d 397 (1985), lv den 424 Mich 895 (1986). "Compensation" means all wages, salaries, fees, bonuses, commissions or other payments

made in a taxable year on behalf of or for the benefit of employees. Compensation includes certain fringe benefits and employment taxes. MCL 208.4(3); MSA 7.558(4)(3).

The terms "employee" and "employer" are defined as stated in the Internal Revenue Code, 26 USC 3401(c) and (d), respectively. MCL 208.5; MSA 7.558(5). 26 USC 3401 *et seq.* establishes rules for withholding federal income tax at the source of "wages." An individual is an employee for federal employment tax purposes if he has the status of an employee under the usual common-law rules applicable in determining the employee-employer relationship. Employment tax regulations establish guidelines for determining that status. *Marvel v United States,* 719 F2d 1507 (CA 10, 1983); 26 CFR 31.3401(c)-1 and 31.3401(d)-1. A person from whom an employer is required to withhold for federal income tax purposes and a person required to withhold for federal income tax purposes shall prima facie be deemed an "employee" and "employer" respectively. MCL 208.5; MSA 7.558(5).

Under the above definitions the project owner was clearly the common-law employer of the onsite employees. Nevertheless, the department contends that under the emphasized language set forth below in the exception found in 26 USC 3401(d)(1), petitioner must be deemed the employer because it controls the payroll. 26 USC 3401(d)(1) provides:

> (d) Employer. For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, *except that—*
> (1) *if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such*

*services, the term "employer"* (except for purposes
of subsection [a]) *means the person having control
of the payment of such wages* . . . . [Emphasis
added.]

We disagree on three grounds. First, to fall within
the exception, control must be exclusive. *Nosan-
chuk v Dep't of Treasury,* 126 Mich App 366, 368;
337 NW2d 66 (1983). As heretofore noted in issue
I, petitioner's control over wages was far from
exclusive.

Second, as noted earlier in issue I and also noted
in the tribunal's written opinion, the department
itself published a policy statement that it is the
legal relationship of an employer and employee
which is relevant to questions arising under the
SBTA, and not the technical regulations found in
the federal income tax act.

Third, we do not believe that the Legislature
intended that the statutory exception contained in
26 USC 3401(d)(1) should determine who will be
treated as an employer for purposes of the SBTA.
Section 5 of the SBTA makes its own reference to
§ 3401(d) and we feel that reference rather than
the more specific reference made by the hearing
officer applies. Section 5 of the SBTA reads in
pertinent part:

Sec. 5(1). "Employee" means an employee as
defined in section 3401(c) of the internal revenue
code. A person from whom an employer is required
to withhold for federal income tax purposes *shall
prima facie be deemed an employee.*
(2) "Employer" means an employer as defined in
section 3401(d) of the internal revenue code. A
person required to withhold for federal income tax
purposes *shall prima facie be deemed an employer.*
[Emphasis added. MCL 208.5; MSA 7.558(5).]

In construing a statute which is unambiguous on

its face, interpretation and construction of its terms are unnecessary. If an ambiguity exists, then this Court must give effect to legislative intent. *Sneath v Popiolek,* 135 Mich App 17; 352 NW2d 331 (1984). To resolve a perceived ambiguity, this Court looks to the object of the statute, and will apply a reasonable construction which best accomplishes the statute's purpose. *In the Matter of Colon,* 144 Mich App 805, 810; 377 NW2d 321 (1985).

On its face, it appears that the exception contained in § 3401(d)(1) should apply to the SBTA because § 5 expressly looks to 26 USC 3401(d) for the meaning of an employer. An ambiguity occurs, however, when one attempts to reconcile the intended purpose of 26 USC 3401(d)(1), which is to fix responsibility for withholding employment taxes, to the purpose of the SBTA, which is intended to tax the incremental value of a taxpayer's economic activity. *Kelvinator, Inc v Dep't of Treasury,* 136 Mich App 218; 355 NW2d 889 (1984), lv den 421 Mich 861 (1985). The technical exception contained in 26 USC 3401(d)(1), although appealing from an administrative standpoint, has no application to the purpose of the SBTA.

Having determined that the controlling statutory provision is § 5(1) and (2) of the SBTA, we next address the meaning of the "prima facie" language contained therein. In its brief the department argues that when a person withholds for federal tax purposes from the wages of another who has performed a service, an *irrebuttable* presumption is created that the person is the employer. Mid America argues that this only creates a *rebuttable* presumption and also requires that the person have legal control over the payment of wages. Which position is correct?

A conclusive presumption in a statute cannot be

rebutted by testimony. *Pearo v City of Mackinac Island,* 307 Mich 290; 11 NW2d 893 (1943). By contrast, it is well settled that a rebuttable presumption makes out a prima facie case and casts the burden of proof on the opposing party. *Krisher v Duff,* 331 Mich 699; 50 NW2d 332 (1951). Here, the Legislature did not expressly provide for a conclusive presumption. Upon reviewing the statute as a whole, we opine that the Legislature intended to create a rebuttable presumption and, thereby, to put the burden of proof on the opposing party.

In the case at bar, the rebuttable presumption (assuming Mid America was required to withhold for federal income tax purposes), was that Mid America was the employer of the on-site employees. Petitioner satisfactorily rebutted that presumption through the testimony of its president, Joseph Schmitt, Jr., and a project owner, Paul Dietz.

Finally, we reject the argument that the management agreement in the instant case was executed with the purpose of improperly shifting the tax burden from petitioner to the project owners. That assertion is not supported by the facts. Instead, the reimbursement provisions appear to be the normal method by which to conduct business between the parties under the facts in this case. In summary, having found the tribunal's decision was authorized by law and is supported by competent, material and substantial evidence, the decision is affirmed.

Affirmed. No costs, a question of public importance being involved.