GLANBIN *v.* KOUSIN.

1. VENDOR AND PURCHASER—OFFER AND ACCEPTANCE CONSTITUTE VALID CONTRACT.

Offer in writing to purchase a certain lot, accompanied by assignment of interest in land contract, and its acceptance by vendor by attaching acceptance thereto, acknowledging receipt of assignment, and agreeing to deliver land contract made at same time and signed by purchaser when uncompleted house on said lot was finished by vendor, constituted a valid and enforceable contract.

2. SAME—MISREPRESENTATION—OPINION—FRAUD.

Where vendees assigned their interest in land contract as first payment on a certain lot purchased on contract, mere expression of opinion by them that, if sums then due on contract they were assigning were paid, monthly payments thereunder would be reduced, was not such misrepresentation as to avoid contract for purchase of lot, especially where not relied upon by vendor.

3. Husband and Wife—Land Contract—Delivery.

Although acceptance of written offer to purchase lot was not signed by vendor's wife, where she signed contract of sale the same day in pursuance of said offer and left it with her husband to deliver, she is bound thereby when it is delivered.

4. Vendor and Purchaser—Acceptance of Assignment.

Where vendor accepted as part consideration for purchase of lot on contract an assignment of vendees' interest in land contract on certain property, assumed ownership and control thereof, and accepted vendees' note for payments and taxes then due, the obligation rested upon him to protect his interest therein against foreclosure.

5. Same—Specific Performance—Accounting.

Vendor who refused to deliver land contract on city lot when house thereon was finished, as agreed upon, is chargeable, in suit for specific performance, with fair rental value of premises thereafter, less sums paid for insurance, taxes, or necessary repairs, and vendees are chargeable with monthly payments which have accrued since that date.

Appeal from Wayne; Browne (Clarence M.), J., presiding. Submitted January 15, 1930. (Docket No. 152, Calendar No. 34,788.) Decided March 6, 1930.

Bill by Samuel Glanbin and another against Nathan Kousin and others for specific performance of a land contract. From a decree for defendants, plaintiffs appeal. Reversed.

*Peirson & Peirson,* for plaintiffs.

*Samuel D. Frankel,* for defendants Kousin.

Sharpe, J. On September 23, 1927, the plaintiffs offered in writing to purchase lot 352 of Pulaski Park subdivision in the city of Detroit from the defendant Nathan Kousin for the sum of $8,500,

$3,000 of which was to be paid by an assignment of their equities in lot 949 in Broad Acres subdivision No. 4 in Macomb county, and what is spoken of as the "Belmont property" in Hamtramck, the balance of $5,500 to be paid at the rate of $45 per month. The agreement recited that, as an evidence of their good faith, the plaintiffs therewith deposited with Kousin the land contracts held by them and assignments thereof for the purchase of said properties. The defendant Kousin attached an acceptance of this offer, acknowledged the receipts of the assignments and land contract, and agreed to convey in accordance with the terms and conditions thereof.

There is much confusion in the record as to when certain things were done, but it appears that after this instrument was executed the defendant decided that he did not want the assignment of the contract for the purchase of lot 949, on which but $200 had been paid, and that he detached and destroyed the same; that at his direction the scrivener changed the amount of the down payment from $3,000 to $2,800, and the amount thereafter to be paid from $5,500 to $5,700, and that this change was assented to by plaintiffs. Apparently by inadvertence, plaintiffs' offer to assign this contract as a part of the down payment on the purchase price was not eliminated therefrom.

On the same day Kousin and his wife executed a contract to sell to plaintiffs said lot 352 for the sum of $8,500, of which $2,800 was acknowledged to be then paid. This contract was also signed by plaintiffs, but a copy thereof was not delivered to them. A dwelling was then in process of erection on this lot, and was to be completed by Kousin, after which a copy of the contract was to be delivered to plaintiffs. The contract provided that the first monthly

payment should be made by plaintiffs "30 days after house completion." The building was completed about November 1st, but Kousin refused to deliver the copy to the plaintiffs. His claim then was that they had represented to him that J. H. O'Hara Company, the vendor in the Belmont property contract, would reduce the monthly payment provided for therein from $95 to $85 per month, and that it had refused to do so. Plaintiffs deny that this representation was made by them.

At the time the contracts were executed, there was money due on the O'Hara contract and for unpaid taxes, and plaintiffs gave Kousin their note for $150, payable in 60 days, to make payment thereof. It also appears that Kousin thereafter exercised acts of ownership over this property, and treated the occupants therein as his tenants.

On December 5th, an attorney representing plaintiffs wrote Kousin, requesting performance. Kousin then mailed to plaintiffs the O'Hara contract and assignment thereof. In the meantime, the O'Hara company had instituted proceedings to recover possession of the Belmont property, and a judgment of restitution was entered by the circuit court commissioner on December 17th, on which a writ of restitution was issued and the O'Hara company put in possession on January 20, 1928. The plaintiffs were made defendants in this proceeding, and the record discloses that a plea of "not guilty" was entered. Kousin was served with notice of the judgment before the time for payment had expired.

While these proceedings were pending, the attorneys for the parties endeavored to effect a settlement between them. On December 20th they met at the office of plaintiffs' attorney. A contract had been prepared by him. It contained a recital that

$2,800 had been paid on the purchase price of lot 352, and that $5,700 was yet due thereon. Kousin refused to sign it unless the down payment was fixed at $2,800 and he be given the assignment of lot 949.

On January 11, 1928, plaintiffs filed the bill of complaint herein, praying for specific performance of the agreement of September 23d. In the meantime, Kousin had sold lot 352 to the defendants Tony Wolosyn and his wife. They were made parties by order of the court. After hearing, the court dismissed the bill and the cross-bill of the Wolosyns, holding that plaintiffs' remedy against Kousin was in an action at law. The rights of the Wolosyns had been terminated by forfeiture. Plaintiffs appeal.

The offer of plaintiffs to purchase and its acceptance by Kousin constituted a valid and enforceable contract between the parties thereto. Under its terms, as modified by the change in the amount of the down payment, it was the duty of Kousin to deliver to the plaintiffs the land contract prepared at the same time, and in which the amount of the down payment was correctly stated, when the building then being constructed on lot 352 was completed. It is conceded that it was so completed on or about November 1st. Demand therefor was made on December 5th. Delivery should then have been made unless Kousin's claim of misrepresentation avoided the contract. We are not so impressed. While plaintiffs expressed the opinion that, if the sums due on the contract were then paid, the O'Hara company would consent to reduce the monthly payments from $95 to $85 per month, it seems clear that Kousin did not rely thereon. Mr. Muller, who acted for both parties in the deal, testified that when the matter was under discussion he "went to O'Hara and

spoke to them. They say if they get their back payment they reduce it and then Kousin says all right.'' It also appears that at the conference held on December 20th, at which a settlement was attempted, no such claim was insisted on by him.

It is also urged that the preliminary agreement is unenforceable because not signed by Mrs. Kousin. She executed the land contract on the same day pursuant thereto, and left it with her husband for delivery. If delivered, as we think it should be, she will be bound thereby.

After the preliminary agreement was entered into and the contract for the Belmont property assigned to Kousin and he assumed ownership and control over the property, the obligation rested upon him to protect his interest therein against the foreclosure proceeding brought by the O'Hara company. Plaintiffs had given him their note for $150 to cover payments on the contract then due. Kousin did not use its proceeds for that purpose as it was expected he would do. Neither did he return this note to plaintiffs until January 18, 1928, after the time for redemption under the foreclosure proceedings had expired.

The plaintiffs are entitled to a decree for specific performance by delivery of the contract executed on September 23, 1927. It appears, however, that the building erected violates the building code of the city by not leaving a sufficient space between it and the adjoining lot. The contract prepared by plaintiffs' attorney, and which Kousin was urged to execute on December 20th, corrected the description in this respect. As plaintiffs were at that time willing to have such correction made, the decree may so provide.

An accounting must be had. The defendant Kousin is chargeable with the fair rental value of the

building on lot 352 after November 1, 1927, less any sums paid by him for insurance, taxes, or necessary repairs, if any, on the same. The plaintiffs are chargeable with the monthly payments which have accrued on the contract since that date. If counsel can agree upon these amounts, the account may be stated in the decree. If not, there will be remand for its ascertainment. The appellants will recover costs.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.