## BROTMAN v ROELOFS

1. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—CONTRACTS—
   REZONING PROVISIONS—WAIVER.

   Waiver by a purchaser of real estate of a provision in the
   contract for sale that the purchase is subject to obtaining a
   zoning variance, made after the disapproval of the variance by
   the zoning board, does not prevent the grant of specific per-
   formance to the purchaser where the rezoning provision is
   included to protect the purchaser's intended use of the prop-
   erty, thus benefiting only the purchaser, and where there is no
   contract language specifically providing that the option to
   purchase will lapse within a specific time period upon failure to
   obtain a zoning variance.

2. SPECIFIC PERFORMANCE—CONTRACTS—TERMS OF CONTRACT—
   VAGUENESS.

   Specific performance of an agreement to purchase real estate
   should not be granted where the agreement is so vague that
   the minds of the parties did not meet on the essential particu-
   lars or if the court cannot determine upon what terms the
   parties agreed.

3. SPECIFIC PERFORMANCE—CONTRACTS—SALE OF REALTY—VENDOR
   AND PURCHASER—MATERIAL TERMS OF CONTRACT—CLARIFICA-
   TION OF TERMS.

   The material terms which must be clearly established in a
   contract for the sale of real estate in order for specific perform-
   ance to be granted are the identification of the property, the
   parties, and the consideration; written provisions which are
   indefinite may be clarified by extrinsic factors, but specific

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 8] 71 Am Jur 2d, Specific Performance § 112 *et seq.*
[4] 17 Am Jur 2d, Contracts §§ 332, 334.
[5] 27 Am Jur 2d, Equity §§ 136–144.
[6] 12 Am Jur 2d, Brokers § 84.
[7] 71 Am Jur 2d, Specific Performance §§ 125, 137.
[9] 71 Am Jur 2d, Specific Performance § 219 *et seq.*
[10] 71 Am Jur 2d, Specific Performance § 68.

performance should be denied where it would be inequitable to resolve any doubts by inference.

4. CONTRACTS—TIME FOR PERFORMANCE—REASONABLE TIME.

A court, in determining a question concerning time for performance of a contract, may imply a reasonable time where the parties have not included a provision indicating that they considered time to be of the essence.

5. EQUITY—APPEAL AND ERROR—UNCLEAN HANDS—DE NOVO REVIEW.

The Court of Appeals, because it reviews equity matters *de novo,* is not limited to the trial judge's determination or the pleadings of the parties in determining whether a plaintiff had "unclean hands".

6. BROKERS—REAL ESTATE—FIDUCIARIES—DUTIES.

A real estate broker is in a fiduciary relationship with his client, and the duties of loyalty, fidelity, care and disclosure arise either impliedly from the agent's position or out of an express agency contract.

7. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—ALLOCATION OF OBLIGATIONS—EQUITABLE ACCOUNTING.

The normal method of allocating the respective obligations of a plaintiff purchaser and a defendant vendor of real estate where the purchaser is entitled to specific performance and there has been a delay in the transfer of the title is an equitable accounting wherein the vendor is chargeable with rents and profits minus insurance, payment of taxes and necessary repairs, while the purchaser is chargeable with the monthly payments which have accrued since the date of the contract.

8. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—ELECTION OF REMEDY—BENEFIT TO WRONGDOER.

A trial court properly allowed a plaintiff purchaser of real estate, who was entitled to specific performance of a contract for sale, to elect to retain interest on the purchase price and forego payment of taxes paid by the vendor and allowing the vendor to retain any rents and profits in lieu of an equitable accounting where an equitable accounting would have resulted in the wrongdoer benefiting from his actions.

9. SPECIFIC PERFORMANCE—ADDITIONAL RELIEF—EQUITIES OF PARTIES.

A court of equity in granting specific performance may grant in

its decree such additional or incidental relief as is necessary to adequately sort out the equities of the parties.

10. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—TIME FOR PAYMENT—FRUSTRATION OF AGREEMENT.

A trial court in ordering specific performance properly ordered a delay in the time for payment on the sale of the land where the action of the vendor in refusing to carry out the contract caused the time limitation for possession and payment to pass, thus frustrating the intent of the original agreement.

Appeal from Ottawa, Calvin L. Bosman, J. Submitted April 7, 1976, at Grand Rapids. (Docket No. 25793.) Decided August 24, 1976. Leave to appeal applied for.

Complaint by Oscar A. Brotman against Elmer Roelofs and Anna Roelofs for specific performance of a contract to convey real estate. Judgment for plaintiff. Defendants appeal. Affirmed.

*Scholten & Fant,* for plaintiff.

*Leo W. Hoffman,* for defendants.

Before: J. H. GILLIS, P. J., and N. J. KAUFMAN and E. A. QUINNELL,* JJ.

N. J. KAUFMAN, J. Defendants appeal from an order of the Ottawa County Circuit Court which, after a bench trial, granted plaintiff specific performance of a contract to convey real estate.

Plaintiff, who was seeking to purchase property on which he might build a mobile home park, and defendants, who had been seeking a buyer for their property in Zeeland Township, were brought together by one George Kalman, a real estate broker employed by DeRoo Realty of Holland, Michigan. On October 6, 1972, the parties entered into a buy and sell agreement. The parties used

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the standard form of the Holland Board of Realtors. Because plaintiff would need a permit from the township to construct a trailer park, the parties wrote in a proviso that:

"This offer is subject to township giving Permit for trailer park with *Seven* Lots per acre. All suvering (sic) to be paid by the buyer." (Emphasis in original.)

This agreement provided further that the total sale price of $66,000 was made payable by an initial down payment of $15,000 and subsequent annual installments of $5,000 at 6% interest to begin on the agreed date of possession. Pursuant to the agreement, the parties contracted for the "SALE TO BE CLOSED within 30 days after Township gives permit but not later than _____, 19____". No absolute closing date was provided, and plaintiff placed $1,000 in escrow with the broker as a deposit.

In the fall of 1972, defendants and real estate broker Kalman attempted to secure zoning approval for a trailer park on defendants' premises. Shortly before Christmas, defendant Elmer Roelofs and George Kalman appeared before the township zoning board. They were informed that only the Zoning Board of Appeals could grant the required variance, and at the time the appeals board, short two members, could not convene. Not until March 29, 1973 was Elmer Roelofs able to appear before the Zoning Board of Appeals. In the meantime, DeRoo Realty had secured another offer, for $68,000, for defendants' property. When the Zoning Board of Appeals disapproved the trailer park variance, defendants brought the board's letter of denial to the DeRoo Realty office. At this point, defendants attempted to secure a release from

plaintiff so that they could be free to sell their property.

On April 5, 1973, George Kalman telephoned plaintiff concerning the denial of the zoning variance. Plaintiff told Kalman that he still wanted to buy defendants' property, notwithstanding the zoning decision. Kalman then telephoned defendants in Georgia, where they had gone for a vacation, to inform them that plaintiff still desired to purchase the property. Defendant Elmer Roelofs replied that he wanted to wait until his return from Georgia before proceeding. Shortly after defendants returned from Georgia, Kalman telephoned defendants on April 16, 1973, in an attempt to commit them to carry out the sale. Kalman also sent a letter to the defendants on the same date and made the same request. Finally, on April 20, 1973, Kalman received a letter from defendants' attorney which stated that since the condition of zoning approval had not been satisfied, defendants considered the real estate agreement to have expired.

Kalman then informed plaintiff that defendants considered that plaintiff's "option" had expired. On April 20, 1973, plaintiff responded that he considered the agreement still enforceable and that he wanted to close no later than April 27. If defendants refused, plaintiff stated, he would retain counsel and seek judicial enforcement of the contract. When defendants still refused, plaintiff filed the instant suit on April 25, 1973.

On May 22, 1975, the trial judge released the first of two opinions in the case. In granting specific performance, he held that the refusal by the zoning board did not terminate the contract. Rather, the court held, since the condition of zoning approval was requested by plaintiff, it was

solely for plaintiff's benefit and could be waived by plaintiff upon the disapproval by the Zoning Board of Appeals. This waiver was found to have been seasonably exercised. Zoning approval had been sought with reasonable effort and over the normal course of zoning board operations. Further, plaintiff's failure to tender the $15,000 down payment did not bar suit because defendants had manifested their intention not to perform the agreement. After defendants objected, on July 7, 1975, that the proposed judgment did not specify the amount of interest or principal which should be paid by plaintiff and did not reimburse defendants for real estate taxes, the trial court issued a second opinion on September 4, 1975. Since the contract provided for possession by plaintiff on the date of closing and for payments to begin from the date of possession, the court ruled that payments would not begin until the property was actually transferred. Because delay of transfer of possession resulted from defendants' fault, they could not be reimbursed for real estate taxes.

Defendants' first appellate contention is that the trial court erred in holding that the zoning board's refusal to grant a variance did not terminate the contract. In rendering this decision, the trial court relied on the case of *Bliss v Carter,* 26 Mich App 177; 182 NW2d 54 (1970). In *Bliss,* the purchase agreement contained a clause providing that the contract was "contingent upon the purchasers obtaining a rezoning for a mobile home court". *Id,* at 180. The agreement in *Bliss* was to become void if not satisfied within 120 days. During this period, the purchasers notified the sellers that they had elected to buy the property irrespective of whether it would be rezoned. In upholding a grant of specific performance, this Court explicitly ruled

that "the rezoning clause was an escape clause for [the purchaser's] benefit and was subject to waiver by them". *Id,* at 181.

Defendants attempt to distinguish *Bliss v Carter* by arguing that, while the purchaser in *Bliss* waived the rezoning provision prior to action by the zoning board, plaintiff in the instant case did not act until after the board had refused the variance. Defendants contend that, once the board decided, the contract became void. In so arguing, defendants cite *Godfrey Co v Crawford,* 23 Wis 2d 44; 126 NW2d 495 (1964). The court in *Godfrey* viewed the right to waive as existing only until a zoning decision had been rendered.

We disagree with defendants. Decisions in other jurisdictions which have supported the claim made by defendants here have relied on the presence of two factors not existent in the instant case. In *Godfrey Co v Crawford, supra,* the case cited by defendants, and a number of other decisions, courts have denied the purchaser specific performance based on a finding 'that the rezoning provision was included for the benefit of both parties. As such, the rezoning constituted an absolute condition precedent to the performance of the contract, one binding on both parties. See also, *Jones v Saah,* 261 Md 340; 275 A2d 165 (1971), *Monteleone v Blache,* 11 La App 99; 120 So 900 (1929). Here, the trial court explicitly found that the rezoning provision was included for the benefit of the plaintiff purchaser only.

In other cases, courts have eschewed a policy favoring enforcement of contracts where they have found explicit language requiring rezoning as a prerequisite to effectiveness. See *Coopersmith v Isherwood,* 219 Md 455; 150 A2d 243 (1959), *Epstein Hebrew Academy v Wondell,* 327 SW2d 926

(Mo, 1959), *Armstrong Homes Inc v Vasa,* 23 Misc 2d 608; 201 NYS2d 138 (1960). Unlike these cases, there was no language in the instant contract which specifically provided that, upon failure to rezone, within an explicit time period, the option would lapse.

The majority of decisions favor an interpretation allowing the purchaser to waive a rezoning provision. These cases make no distinction between an exercise of the waiver before or after the zoning board decision. See *DiLeonardo v Paoline,* 161 NYS2d 660 (Sup Ct, 1956), and *Funke v Paist,* 356 Pa 594; 52 A2d 655 (1947), and cases cited in Anno., *Effect of provision in real-estate option or land sale contract making the contract subject to zoning or rezoning of the property,* 76 ALR2d 1195, § 3(b), pp 1204–1206. Here, the rezoning clause was included to protect plaintiff's intended use of the property and, as such, did not effect defendant's interest in the property. Once defendants sold the property, then interest in its use would cease. Once the variance was rejected, the only duty imposed on plaintiff was that of seasonably notifying defendants of his waiver. As the trial court held, he did so.

Defendants' second claim of error is that the trial court should not have granted specific performance because the agreement failed to provide an absolute closing date. The lack of a closing date, defendants contend, made the contract too indefinite to be enforced. In an agreement to purchase real estate, specific performance will not be granted where the agreement is so vague that the minds of the parties did not meet on the essential particulars, or if the court cannot determine upon what terms the parties agreed. *Henry v Rouse,* 345 Mich 86, 92; 75 NW2d 836 (1956). The material

terms of the contract which must be clearly estab-
lished are the identification of the property, the
parties, and the consideration. *Dassance v Nien-
huis,* 57 Mich App 422; 225 NW2d 789 (1975). In
general,

"Failure of a contract for the sale of realty to fix a
definite time for the consummation of the transaction
does not prevent specific performance if the contractual
terms are so expressed that the court can determine
with reasonable certainty the parties' duties and the
conditions under which performance is due." 71 Am Jur
2d, Specific Performance, § 35, p 56.

Written provisions which are indefinite may be
clarified by extrinsic factors. 5A Corbin on Con-
tracts, § 1174, pp 280–282. However, specific per-
formance should be denied where it would be
inequitable to fill in the gaps and resolve any
doubts by inference. *Id,* p 292.

Courts of equity have been granted broad discre-
tion in determining requests for specific perform-
ance of contracts. *Smith v Lawrence,* 15 Mich 499,
501 (1867), *Nedelman v Meininger,* 24 Mich App
64, 76; 180 NW2d 37 (1970). Where questions
concerning time provisions have arisen, the signifi-
cant factor has been whether the parties consid-
ered time to be of the essence. Where the parties
have explicitly included such a provision, courts of
equity are extremely circumscribed in their ability
to imply time conditions. *Waller v Lieberman,* 214
Mich 428, 439; 183 NW 235 (1921), *Kennedy v
Brady,* 43 Mich App 760, 763; 204 NW2d 779
(1972). In the absence of such explicit conditions,
the court may imply a reasonable time period. *Id,*
See generally, Anno., *Specific Performance of Land
Contract Notwithstanding Failure of Vendee to*  ·

*Make Required Payments on Time,* 55 ALR3d 10,
§ 5(c)–(d), pp 34–39.

We find no error in the trial court's ruling here.
The contract imposed a requirement that closing
occur 30 days after approval by the zoning com-
mission. This same time period could reasonably
be implied as an equitable requirement for action
by plaintiff after refusal by the commission. The
facts show that plaintiff acted quickly after notifi-
cation and that any delay was occasioned by de-
fendants. We, therefore, find nothing abusive or
inequitable in the trial court's ruling.

Defendants next contend that the trial judge's
decision failed to determine whether Kalman, al-
though admittedly employed by the defendants,
was in fact the true agent of the plaintiff and
colluded with him in imposing oppressive contrac-
tual terms on the defendants. If there was collu-
sion between plaintiff and the real estate broker,
defendants claim the doctrine of clean hands bars
the granting of specific performance. This, defend-
ants assert, is a threshold issue in determining the
propriety of granting specific performance on the
contract.

This theory of defense was never fully articu-
lated by defendants in the court below. Therefore,
the trial judge did not specifically rule on this
matter. We are not, however, limited to the trial
judge's determination or the pleadings of the par-
ties in determining if in fact plaintiff had unclean
hands resulting from his relationship with Kal-
man, as we review equity matters *de novo. Sta-
chnik v Winkel,* 394 Mich 375; 230 NW2d 529
(1975). If by reference to the record before us it is
determined that this issue was actually litigated
by the parties, this Court will consider the issue on
appeal.

According to Michigan law, a real estate broker is in a fiduciary relationship with his client. *Parker v Poll,* 16 Mich App 542; 168 NW2d 425 (1969). The duties of loyalty, fidelity, care and disclosure may arise impliedly from the agent's position or out of an express agency contract in a listing agreement. Comment, 18 Wayne L Rev 1343, 1356–1357 (1972). It is conceded that if plaintiff interfered in the relationship between Kalman and defendants he is not entitled to specific performance.

There is, of course, no reason to apply the clean hands doctrine unless we have circumstances before us which dictate its application. There is little, if anything, in the record before us indicating its application to the instant case. Indeed, the record may fairly be read to indicate that it was the defendants who were attempting to take advantage of the situation to increase their return on the sale. Defendants expressed no discomfort with the bargain until a subsequent offer at a somewhat higher price was made on the parcel. Consequently, defendants attempted to show the oppressiveness of the original terms. The logical inference is that the defendants simply sought to enter into a better deal. Considerations of this type are obviously not appropos in relieving defendants of their obligations under the contract.

Moreover, there is an absence of evidence showing misconduct on the part of plaintiff and Kalman. In fact, Kalman sought another potential purchaser, after the original agreement had been entered into, to protect the defendants in case the contract with plaintiff fell through. Thus, we are not dealing with an evidentiary record which compels a finding of unclean hands on the part of the plaintiff.

Another claim of error raised by defendants relates to the relief granted in the order of specific performance. Defendants argue that the trial court erred in not requiring plaintiff to pay all accrued payments of principal, consisting of the initial down payment and installments, from the original date of closing provided in the contract. In addition, defendants seek reimbursement for real estate taxes paid while they were in possession of the property.

Where plaintiff-purchaser is entitled to a decree of specific performance the normal method of allocating the respective obligations is by an equitable accounting. The defendant-vendor is chargeable with rents and profits minus insurance, payment of taxes and necessary repairs; while the plaintiff-purchaser is chargeable with the monthly payments which have accrued since the date of the contract. *Glanbin v Kousin,* 249 Mich 603; 229 NW 417 (1930).

Plaintiff, however, does not seek an accounting, but instead wants to retain interest on the purchase price as the measure of damages. Furthermore, plaintiff contends that the trial court was correct in interpreting the contract to delay payment due to the delay in transfer of possession resulting from the defendants' conduct.

Michigan Courts have not specified what course of conduct a plaintiff vendee *must* take when seeking specific performance. At most, the holding of relevant Michigan case law is that a plaintiff vendee *may* get an equitable accounting when such relief is sought and he is otherwise entitled to such relief. *Milner Hotels, Inc v Erhman,* 307 Mich 347; 11 NW2d 914 (1943). But the issue before us now is not whether plaintiff may seek an equitable accounting, but whether, once entitle-

ment to specific performance is shown and the plaintiff is shown not to be at fault, plaintiff may exercise an election as to which relief he is entitled to.

The possibility of this election has been recognized in other jurisdictions. *Russell v Western Nebraska Rest Home, Inc,* 180 Neb 728; 144 NW2d 728 (1966), *Mitchell v Mutch,* 189 Iowa 1150; 179 NW 440 (1920). This rule is based on sound policy considerations. The obligation of the trial court, as it has always been, is, upon finding a grant of specific performance proper, to blend the peculiar factual surroundings into a workable and reasonable settlement of both parties' obligations. There is no universal answer to do the job in every case; the great multitude of facts that may properly enter into the court's determination dictates that flexibility, not rigidity, be the rule. Flexibility is particularly required where, as here, the wrongdoer will benefit from his actions. Such a result is intolerable, an anathema to the avowed purposes of equitable relief. We therefore hold that allowing plaintiff to elect to retain interest on the purchase price and forego payment of the taxes paid by the vendor in lieu of an equitable accounting was proper.[1] This allows the defendants to retain the rents and profits derived from their wrongful possession.

Next, we must consider whether the trial court properly delayed the time for payment of the principal and installments in his order. The trial court reasoned he was merely following the terms

---

[1] We do not hold that granting an election is proper in every case. Of course, it is still incumbent upon the trial court to weigh the relative equities of the parties in light of the factual context at hand. Moreover, any alternative measures which might more effectively resolve the dispute should be considered by the court. As always, the trial court must make its decision within the bounds of sound judicial discretion.

of the contract. We agree with the trial judge's result, not his reasoning.

A court of equity in granting specific performance may grant in its decree for specific performance such additional or incidental relief as is necessary to adequately sort out the equities of the parties. *Van Camp v Van Camp,* 291 Mich 688; 289 NW 297 (1939), *Klais v Danowski,* 373 Mich 281; 129 NW2d 423 (1964). The Michigan Supreme Court has allowed courts to mold their orders to effectuate the purposes for which the contract was entered into:

"As before noted, the trial court recognized in the decree entered that because of appellants' refusal to complete the transaction on November 1, 1955, changed conditions required the insertion of provisions designed to protect the rights and equities of the parties to the end that neither might suffer prejudice or gain an unconscionable advantage. The insertion of such provisions did not involve changing the agreement between plaintiff and the appellants, but was designed merely for the purpose suggested. Appellants are not in position to complain because the decree recognized the situation resulting from their refusal to perform their agreement in accordance with its terms." *Brin v Spruance,* 348 Mich 29, 35–36; 81 NW2d 401 (1957).

This result is buttressed by the conclusions of other courts faced with the same problem. In *McFarland v Gregory,* 322 F2d 737 (CA 2, 1963), the Court of Appeals for the Second Circuit found the actions of the District Court entirely reasonable in extending the time limits on plaintiff's rights where the original time limits were defeated by defendant's actions in initially refusing to perform. The rule they stated said as follows:

"In a contract action, the determination whether

specific performance shall be decreed rests in the sound discretion of the trial court. 2 Restatement, Contracts § 359(1). In framing such a decree the performance that it requires need not be identical with that promised in the contract. It is within the bounds of judicial discretion, therefore, to extend the time within which an obligation may be performed. Id. at § 359(2); 5 Williston, Contracts § 1424 (rev. ed. 1937); Haener v. Albro, 73 Idaho 250, 249 P.2d 919 (1952); see Lissau v. Smith, 215 Md. 538, 138 A.2d 381, 384–385 (1958)." *Id,* at 739.

In the case at bar, defendants in refusing to carry out the contract caused the time limitation for possession and payment to pass by. Thus, the intent of the original agreement was allowed to be frustrated. The delayed payment of the installments merely extended the maturity of the purchaser's debt and deprived the vendor of any advantage from refusing to perform the contract. Therefore, we conclude the delay in the time for payments was proper.

Affirmed. Costs to plaintiff.