924 F.2d 1059
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TACO BELL CORPORATION, Plaintiff-Appellant,
v.
BLOOR AUTOMOTIVE, INC., Defendant-Appellee.
 No. 90-1442.
 United States Court of Appeals, Sixth Circuit.
 Feb. 5, 1991.
 
 Before DAVID A. NELSON and RYAN, Circuit Judges, and LIVELY, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff Taco Bell Corporation appeals the district court's summary judgment for defendant Bloor Automotive in this action for specific performance of a contract under which Taco Bell agreed to sell real estate to Bloor. Taco Bell also appeals the denial of its own motion for summary judgment. The issues are 1) whether Bloor impliedly waived its contractual right to terminate the contract in the event that specified contingencies failed to occur; 2) whether these contingencies in fact failed; and 3) whether Taco Bell's taking of this appeal merits imposition of sanctions under Fed.R.App.P. 38.
 
 
 2
 We conclude that Bloor did not waive its right to terminate the contract for failure of the specified contingencies; that at least one of the contingencies named in the contract failed, and that Taco Bell's decision to appeal does not warrant sanctions.
 
 I.
 
 3
 In October 1988, Bloor submitted a written offer to Taco Bell to purchase specified real estate in Farmington Hills, Michigan, for approximately $250,000. Bloor, then owned by Tenneco Corporation, apparently intended to use the property for a "Speedy Muffler" business. Taco Bell accepted Bloor's offer on November 1, 1988, and an offer to purchase agreement was executed by both parties. Of critical importance to this appeal is a "Buyer's Contingencies" clause (clause 10) in the offer to purchase. The clause reads as follows:
 
 
 4
 10. BUYER'S CONTINGENCIES: This Offer to Purchase is contingent upon the occurrence of the following within ninety (90) days after acceptance of this Offer to Purchase by Seller:
 
 
 5
 (a) That there shall exist to at least the perimeter of the Premises adequate service for water, storm sewer, sanitary sewer, electric, and natural gas in amounts deemed adequate by Buyer and that such services are available for a tie-in or tap-in to Buyer at reasonable cost and expense.
 
 
 6
 (b) That Buyer shall have received all building, sign and curb cut permits and any and all other necessary permits and permissions from appropriate local, county or state governments to allow the construction of Buyer's standard building and signage.
 
 
 7
 (c) At Buyer's sole cost and expense Buyer shall have obtained a soil test report from which Buyer can conclude in its sole judgment that soil conditions do not indicate extraordinary construction expense to complete Buyer's planned improvements.
 
 
 8
 (d) That Buyer shall have secured consent of its Board to conclude this transactions.
 
 
 9
 These conditions are for the sole benefit of the Buyer and may be waived only by the Buyer. In the event any of these conditions have not been fulfilled within ninety (90) days after acceptance of this Offer to Purchase by Seller, Buyer, at Buyer's option, may either (1) reasonably extend the date by which these conditions may be satisfied, or (2) terminate this offer to purchase in which event all earnest money deposited shall be returned to Buyer. Buyer agrees to notify Seller in writing within the ninety (90) days referenced above of their intention to exercise Buyers options to either (1) reasonably extend the date by which these conditions may be satisfied, or (2) terminate this offer to purchase in which event all earnest money deposited shall be returned to Buyer. In the event Buyer does not notify Seller in writing within the ninety (90) days after acceptance of this Offer to Purchase by Seller, Buyer will have been deemed to have waived all Buyers contingencies listed in Paragraph 10.
 
 
 10
 (Emphasis added.)
 
 
 11
 After executing the agreement, Bloor initiated steps to obtain the permits specified in clause 10(b). In January 1989, Bloor informed Taco Bell by letter that pursuant to clause 10, Bloor would be exercising its right to extend the original 90-day period allowed for the satisfaction of the contingencies. The letter indicated that Bloor had employed an engineering firm to assist in obtaining the required permits and that "every effort [was] being made to expedite all of the permits, etc."
 
 
 12
 In April 1989, the Farmington Hills Planning Commission approved Bloor's site plan on the condition, among others, that a taper (curb cut) be added to the site plan. In June 1989, Bloor wrote Taco Bell again, apologized for the delay, and indicated that by the first week in July, Bloor should be in a position to set a closing date. Bloor also stated, "We have been moving forward.... [E]ngineering and landscaping plans have been with the City for a few weeks and to date the City has voiced no objections." In July 1989, however, the Michigan Department of Transportation informed Bloor, and the engineering firm that Bloor had hired, that tapers would be unacceptable to the state.
 
 
 13
 Meanwhile, by August 1989, another complication had arisen in that Tenneco Automotive had agreed to sell Bloor Automotive to a Canadian investment group. Clause 10(d) of the contract with Taco Bell listed as a required contingency that "Buyer shall have secured consent of its Board to conclude this transactions [sic]." Nowhere elaborately defined, "Board approval" at Bloor proceeds simultaneously with efforts to obtain permits and apparently is a process of internal review in which different groups review a proposed transaction to determine the wisdom of locating a Speedy Muffler at a new site. The impending transfer of Bloor to a new owner made achieving Board approval problematic, and on August 4, 1989 Bloor wrote Taco Bell:
 
 
 14
 While the buying group plans to continue the expansion of Speedy Muffler King, it is impossible at this time to determine whether the above referenced location will fit into their expansion plans. In addition, while we have used our best efforts to secure the necessary permits and approvals to construct a Speedy Muffler King shop on the above location, such permits and approvals are not in hand.... [I]t is unfair to continue holding this property....
 
 
 15
 Accordingly please accept this letter as notice that the buyers contingencies to complete this transaction as set forth in paragraph 10 of the Offer to Purchase the above captioned property have not been satisfied. We would be delighted to assist you in your efforts to remarket....
 
 
 16
 Three days later, on August 7, 1989, the Farmington Division of Public Works wrote Bloor's consulting firm indicating that Farmington would contact the Michigan Department of Transportation regarding the department's reasons for prohibiting the tapers. After that date, evidence arose indicating that Farmington might have been willing to abandon its curb cut plans had Bloor not terminated its conditional agreement with Taco Bell. Ultimately Tenneco did sell Bloor to the Canadian group, and the board of the new company voted that the Taco Bell real estate would not be useful in their expansion plans.
 
 
 17
 Alleging breach of contract and seeking specific performance of Bloor's conditional agreement to buy real estate, Taco Bell brought an action against Bloor in the Oakland County (Michigan) Circuit Court. Bloor removed the action to federal court with jurisdiction based upon diversity of citizenship. Both parties moved for summary judgment, and the district court granted Bloor's motion. Taco Bell appeals from that judgment and from the denial of its own motion for summary judgment. Thus, both parties contend that there is no genuine issue of material fact. Additionally, Bloor requests that we impose sanctions against Taco Bell under Fed.R.App.P. 38 on the grounds that the appeal is frivolous.
 
 II.
 
 18
 Summary judgment is appropriate where no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court determines whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Of course, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Riebold, Inc., 369 U.S. 654, 655 (1962)). The movant meets its initial burden "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). At that point, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); Anderson, 477 U.S. at 250.
 
 
 19
 In this diversity action, our task as a federal court is to decide the issues of contractual interpretation or enforcement in accordance with Michigan law as reflected in both past and anticipated decisions of the Michigan Supreme Court. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78-80 (1938). Decisions of the Michigan Court of Appeals are indicative of how the Michigan Supreme Court would rule on an issue. While ambiguous or incomplete contractual language may give rise to a question of fact, construction of a contract generally is a question of law for the court. Mid America Management Corp. v. Dep't of Treasury, 153 Mich.App. 446, 459-60, 395 N.W.2d 702, 707 (1986).
 
 III.
 
 20
 Taco Bell argues that Bloor impliedly waived its contractual right to terminate the contract for failure of certain specified contingencies. Taco Bell contends that an implied waiver resulted from either 1) Bloor's exercise of its contractual right to extend the original period set for satisfaction of the contingencies, and/or 2) Bloor's failure to terminate the contract within a reasonable time after the expiration of the original period.
 
 A.
 
 21
 Taco Bell argues that since the contract gave Bloor "options to either (1) reasonably extend the date ... or (2) terminate this offer" (emphasis added), Bloor had no right to do both. Thus, Taco Bell argues, when Bloor opted to extend the 90-day period for satisfaction of contingencies, it simultaneously forfeited (or "waived") its option to terminate its offer. In Taco Bell's view, by opting to extend the period beyond 90 days, Bloor implicitly assumed the risk that it ultimately would not be able to obtain the required permits and Board approval. Bloor responds that the contract afforded it the option to terminate the offer even after expiration of the original 90-day period. In fact, the contract provides only that in order to avoid waiving satisfaction of the contingencies as a condition of Bloor's obligation to perform, Bloor must exercise at least one of the options within the 90-day period following acceptance of the offer.
 
 
 22
 As the district court noted, the contract is silent as to whether Bloor retained the right to terminate when Bloor opted to extend the period for contingency satisfaction beyond the original 90-day period and the contingencies ultimately failed after the end of the 90-day period. In cases where a contract is silent or ambiguous on a point, courts sometimes find it useful to consider extrinsic evidence regarding the parties' actual intent with respect to the term. See Goodwin, Inc. v. Orson E. Coe Pontiac, Inc., 392 Mich. 195, 206, 220 N.W.2d 664, 669 (1974). However, Bloor and Taco Bell do not even allege that they could produce any evidence concerning their ex ante intentions. Both parties maintain that the Sixth Circuit can decide the case as a matter of law without further factual development. Therefore it would be a futile gesture for us to remand this case for factual development on the issue of intent.
 
 
 23
 Indeed, logically, Taco Bell's proposed contractual interpretation must fail. If the contract terms actually meant that by extending the 90-day period, Bloor forfeited its right to terminate the offer, then the right to reasonably extend the period would be of no use to Bloor: whether or not the contingencies ever were satisfied after the 90-day period, Bloor would be unconditionally obligated to perform because it would have forfeited its right to terminate. Thus the entire clause giving Bloor the right to extend the 90-day period would be superfluous--a very unreasonable result. Under Michigan law, courts avoid contractual interpretations that produce absurd or unreasonable results. Miller v. Van Kampen, 154 Mich.App. 165, 168, 397 N.W.2d 253, 254 (1986); Port Huron Area School District v. Port Huron Education Association, 120 Mich.App. 112, 116, 327 N.W.2d 413, 415 (1982).
 
 
 24
 It would have been illogical for Bloor to agree to a provision leaving open the possibility that Bloor would have to purchase the property even if the Board did not approve of it and even if Bloor could not obtain permits necessary to use the property productively. Clause 10's raison d'etre was to allow Bloor to escape assumption of this very risk. In interpreting and enforcing contractual provisions, we will not depart from the parties' original intention, as plainly reflected in the contractual language itself.
 
 
 25
 Because Taco Bell's contractual interpretation has proven untenable, we hold that Bloor did not waive the right to terminate by exercising the right to reasonably extend the period for satisfaction of contingencies.
 
 B.
 
 26
 The contract provides that Bloor may extend the 90-day period only "reasonably," and Taco Bell contends that Bloor waived its right to terminate by waiting an unreasonably long time after expiration of the 90-day period before attempting to terminate. Under Michigan law, the court determines the reasonableness of a time period by referring to the nature of the contract. J.W. Knapp v. Sinas, 19 Mich.App. 427, 432, 172 N.W.2d 867, 869 (1969). While Taco Bell accepted Bloor's offer on November 1, 1988, Bloor did not finally notify Taco Bell of the decision to terminate until August 4, 1989.
 
 
 27
 Citing Brotman v. Roelofs, 70 Mich.App. 719, 246 N.W.2d 368 (1976), lv. to appeal denied, 399 Mich. 801 (1977), Taco Bell contends that "in determining what is a reasonable time to perform under a contract, a contract designation of time for a similar or related performance is prima facie reasonable." At most, Brotman established that in determining what is a reasonable time to perform under a contract, a contract designation of time for the same performance under immaterially different conditions is prima facie reasonable. Brotman, 70 Mich.App. at 728, 246 N.W.2d at 372. Taco Bell concludes that since the contract allowed 90 days for Bloor either to extend the period or to terminate the contract, 90 days (measured from the date the original 90-day period expired) also would be a reasonable time for Bloor to either terminate or become bound through forfeiture of its right to terminate. However, Taco Bell's analogy compares vastly different performances: declaring an extension of time versus making a final decision to become bound or to terminate. Therefore, we conclude that Brotman does not apply.
 
 
 28
 Even assuming that Bloor may have waited an unreasonable amount of time before attempting to terminate, what Bloor forfeited by the terms of the contract was not its right to terminate but its right not to terminate. Generally, it is more sensible for a contract to say "unless favorable contingencies materialize within a reasonable amount of time, the agreement is no longer binding" than for the contract to say "if favorable contingencies fail to materialize within a reasonable amount of time, we will become unconditionally bound." In all likelihood, the requirement that the period of extension be reasonable was included in order to protect Taco Bell from being held for an unreasonable amount of time in "contractual limbo"--that is, potentially but not definitely contractually bound. Thus Bloor would forfeit its right to hold Taco Bell to the contract if Bloor was not able to fulfill the contingencies and thus bind itself within a reasonable time. Bloor would retain its right to terminate indefinitely unless Taco Bell acted to escape from contractual limbo. To effect its escape, Taco Bell would have to announce at some point that a reasonable amount of time had passed and that therefore Bloor must either immediately agree to be bound or immediately release Taco Bell from its potential contractual duties.
 
 
 29
 In reality, Taco Bell received periodic updates from Bloor but never declared that the time extension had become unreasonable or that Taco Bell had elected to be released from the contract. Whether Bloor, by extending the period unreasonably, would lose its right to terminate or whether it instead would lose its right not to terminate, we believe that Bloor could not lose either right without some action by Taco Bell informing Bloor that Bloor was either irrevocably bound or irrevocably excluded from the agreement. To put it another way, by remaining silent, Taco Bell implicitly waived its right to force Bloor into either terminating or becoming unconditionally bound.
 
 
 30
 Having determined that Bloor did not waive its right to terminate for failure of contingencies, we now turn to the issue of whether any of the contingencies in fact failed.
 
 C.
 
 31
 Where a contract is conditioned upon contingencies the occurrence of which rests upon the discretion and control of one of the parties, Michigan law imposes a requirement of good faith efforts on the part of the party in control. Mehling v. Evening News Association, 374 Mich. 349, 352, 132 N.W.2d 25, 26 (1965). Cf. Ferrell v. Vic Tanny International, Inc., 137 Mich.App. 238, 243; 357 N.W.2d 669, 672 (1984). If the party in control does not live up to the good faith requirement, its obligations under the contract become unconditional. Mehling, 374 Mich. at 352, 132 N.W.2d at 26. Thus any failure of contingencies relieves Bloor of its obligations under the conditional contract only if the contingencies failed despite good-faith efforts on Bloor's part.
 
 
 32
 The parties agree that when Bloor decided to terminate the contract, it had not been able to obtain the necessary permits. Taco Bell does not allege that at any time up until the time that Bloor terminated, Bloor had not endeavored in good faith to obtain the permits. Rather Taco Bell contends that Bloor should have continued to try to get the permits because evidence appearing after Bloor's decision to terminate indicated that the city eventually would have relented and issued the permits despite curb cut problems. Taco Bell makes much of the fact that Bloor wrote that the permits, despite best efforts, still "were not in hand." However, that choice of phraseology might mean only that Bloor was tired of wrangling and "redtape" and was deciding in good faith to abandon the effort at that point. Perhaps Bloor could not foresee that the city eventually would relent, or perhaps Bloor did not care to wait indefinitely. In any event, the significant fact to us is that before exercising its option to terminate, Bloor displayed good faith over what Taco Bell admits was an extended period of time.
 
 
 33
 We hold that by August 4, 1989, the contractual condition requiring Bloor to obtain necessary construction permits had failed and that Bloor accordingly was within its rights in exercising its contractual option to terminate. In view of this holding, we need not address the issue of whether Bloor, despite good faith efforts, failed to obtain board approval.
 
 IV.
 
 34
 Fed.R.App.P. 38 provides, "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." We regard an appeal as frivolous "if it is obviously without merit and is prosecuted for delay, harassment, or other improper purposes." N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 591 (6th Cir.1987); Vic Wertz Distributing Co. v. Teamsters Local 1038, 898 F.2d 1136, 1143 (6th Cir.1990). Certainly a pattern of attempts to frustrate an opposing party's clearly justified demands or defenses counsels in favor of imposing sanctions. Cincinnati Bronze, 829 F.2d at 591. Here, however, the appeal was not obviously devoid of merit, and we see no basis for concluding that in taking the appeal, Taco Bell was motivated primarily by an improper purpose. Therefore we decline to impose sanctions.
 
 V.
 
 35
 For the reasons given above, Bloor's request for sanctions is denied, and the district court's grant of summary judgment is AFFIRMED.