*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GRAND TRAVERSE MARKET PLACE, LLC,

        Plaintiff-Appellant,

v

CWI, INC., doing business as CAMPING WORLD, INC.,

        Defendant-Appellee.

UNPUBLISHED
February 29, 2024

No. 362807
Grand Traverse Circuit Court
LC No. 2022-036042-CB

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

        In this dispute involving a commercial real estate lease agreement, plaintiff appeals by right the trial court's order granting partial summary disposition to defendant and partially denying plaintiff summary disposition under MCR 2.116(I)(2).[1]  We affirm.

---

[1] Although defendant moved for summary disposition under MCR 2.116(C)(8) and the trial court stated that its decision was based on subrule (C)(8), it is clear that the trial court considered evidence outside the pleadings.  In fact, both parties provided the trial court with such evidence.  "[I]f a summary-disposition motion based on MCR 2.116(C)(8) presented the trial court with evidence beyond the pleadings, we treat the motion as having been brought and decided under MCR 2.116(C)(10) because it necessarily involved considering material outside the pleadings." *Cary Investments, LLC v Mount Pleasant*, 342 Mich App 304, 312-313; 994 NW2d 802 (2022) (quotation marks and citation omitted).  See also *Brown v Drake-Willock Int'l, Ltd*, 209 Mich App 136, 143; 530 NW2d 510 (1995) ("If summary disposition is granted under one subpart of the court rule when judgment is appropriate under another subpart, the defect is not fatal and does not preclude appellate review if the record otherwise permits it.").  Therefore, we treat the motion as having been brought and decided under subrule (C)(10).

## I. BACKGROUND

Many of the facts are not in dispute. In 2000, two prior entities who are not involved in this case entered into a lease agreement involving certain commercial property (the Lease). The Lease's original term was for 15 years and would expire on January 31, 2015. However, in 2014, the Lease was extended via amendment another five years to January 31, 2020. The Lease contained a renewal option that is at the heart of this case:

> 3. **OPTIONS TO RENEW**. *If Tenant is not in default with respect to any of its obligations under the terms and conditions of this Lease after notice and expiration of any applicable cure period*, Tenant shall have the option to renew this Lease for three (3) consecutive renewal terms for five (5) Lease Years each subject to the following terms and conditions:
>
> \* \* \*
>
> 3.2 **Automatic Renewal/Notice of Nonrenewal**. Tenant's options to renew shall be automatically exercised with no action required by the Tenant; provided, however, if Tenant elects not to renew, Tenant must give written notice to Landlord of Tenant's election not to renew at least one hundred eighty (180) days prior to the expiration of the initial or renewal term then in effect, which notice shall also include, if applicable, Tenant's election not to extend to January 31 as set forth in Section 3.3.

Therefore, although the Lease was set to expire in 2015—later extended to 2020—the tenant could essentially extend the Lease for an additional 15 years if every extension was used. Section 17.1 provided that, if the tenant failed to pay rent within 10 days of a written notice of default, the landlord could choose to terminate the Lease. Similarly, if the tenant failed to perform any other obligation of the Lease within 30 days of a written notice of default (or a reasonable amount of time if the default was the type that could not be cured within 30 days), the landlord could choose to terminate the Lease.

In 2007, the prior landlord assigned its interest to plaintiff; in 2017, the prior tenant filed for bankruptcy, and the Lease was assigned to defendant. Both plaintiff and defendant are entities that conduct business in Michigan. On April 16, 2019, plaintiff sent to defendant a letter informing it that it was in default by failing to pay certain fees and costs for 2017 and 2018. On June 21, 2019, plaintiff sent to defendant another letter reiterating that defendant was in default. Plaintiff demanded payment within 10 days and threatened to terminate the Lease. On July 8, 2019, defendant sent to plaintiff a response contending that it was not liable for any fees or costs prior to its assignment of the Lease from the previous tenant. However, defendant acknowledged that it was liable for fees and costs after its assignment, and it requested information from plaintiff showing the amount owed.

There was no dispute that plaintiff never provided such information. Additionally, there was no dispute that defendant never provided written notice of nonrenewal or that plaintiff never took action to terminate the Lease or enforce the default against defendant. There was no further correspondence between the parties until after the Lease's term was sent to expire on January 31,

2020, absent renewal. On February 17, 2020, plaintiff sent defendant a letter contending that the Lease had automatically renewed for an additional five years and that defendant was liable for rent, fees, and costs for those years because it never provided written notice of nonrenewal. In contrast, defendant informed plaintiff that the Lease had expired on January 31, 2020, because, due to defendant's prior default, the automatic renewal option could not trigger.

Plaintiff filed a two-count complaint for breach of contract and equitable estoppel. Defendant moved for summary disposition, arguing that it had been in default, that the automatic renewal provision could not trigger, and that the Lease had expired on its own terms after January 31, 2020.[2] Plaintiff raised four arguments in response, and these same four arguments are advanced on appeal. First, plaintiff argued that defendant interfered with the condition precedent of the default provision, thereby preventing defendant from relying on that condition precedent to avoid liability. Second, plaintiff contended that it could unilaterally waive the default provision because it solely benefited itself. Third, plaintiff maintained that there was at least a genuine issue of fact regarding whether defendant had been in default. Finally, plaintiff maintained that equitable estoppel applied because defendant induced plaintiff to believe that defendant was not in default, thereby preventing plaintiff from searching for a new tenant. Plaintiff requested summary disposition under MCR 2.116(I)(2). The trial court agreed with defendant that it had been in default and that this prevented the Lease from automatically renewing for an additional five years. The trial court also rejected plaintiff's position that defendant had ever denied the default.[3] The parties subsequently stipulated to a final judgment and order resolving the remaining issues but retaining plaintiff's ability to appeal the prior order. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review de novo the trial court's decision on summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A motion is properly granted under MCR 2.116(C)(10) when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Dextrom*, 287 Mich App at 415. We "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id*. at 415-416. "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008). Under MCR 2.116(I)(2), "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." Additionally, leases are interpreted using principles of contract, see *G & A Inc v Nahra*, 204 Mich App 329, 330; 514 NW2d 255 (1994), and we review de novo the interpretation of a contract, *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d

---

[2] Defendant's motion involved other matters not relevant or challenged in this appeal.

[3] The trial court made other determinations that are not relevant or challenged in this appeal.

23 (2005). Finally, we review de novo the trial court's decision regarding equitable estoppel. *West American Ins Co v Meridian Mut Ins Co*, 230 Mich App 305, 309; 583 NW2d 548 (1998).

## B. DISCUSSION

First, plaintiff argues that defendant interfered with the condition precedent of the default provision, thereby waiving performance of that condition. We disagree.

Whether a contract is ambiguous is a question of law. *Port Huron Ed Ass'n, MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996). If it is unambiguous, then its interpretation is a question of law. *Id*. However, if the contract is open to more than one reasonable interpretation or otherwise unclear, then it is ambiguous, and its meaning is a question of fact. *Id*. The parties have never disputed that the Lease is unambiguous. "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*." *Rory*, 473 Mich at 468. "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Id*. at 464. When interpreting a contract, it "should be read as a whole, with meaning given to all of its terms." *Detroit Pub Sch v Conn*, 308 Mich App 234, 252; 863 NW2d 373 (2014).

Both parties agree that the default provision in § 3 contains a condition precedent, which was that the tenant could not be in default. "A condition precedent, like the one at issue in this case, is a fact or event that the parties intend must take place before there is a right to performance." *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 131; 743 NW2d 585 (2007) (quotation marks and citations omitted). If the condition precedent is not fulfilled, "there is no cause of action for a failure to perform the contract." *Id*. A condition precedent "is an implied agreement that the promisor will place no obstacle in the way of the" condition precedent being fulfilled, and, "[w]here a party *prevents the occurrence of a condition*, the party, in effect, *waives the performance of the condition*." *Id*. at 131-132 (quotation marks and citation omitted; emphasis added). In effect, "the performance of a condition precedent is discharged or excused . . . ." *Id*. at 132 (quotation marks and citation omitted). To prevent a condition precedent from occurring, a party must take "some affirmative action" or "refus[e] to take action required under the contract . . . ." *Id*. Only when this occurs will the condition precedent be waived. *Id*.

In the present case, plaintiff argues that, by being in default, defendant interfered with the condition precedent of the default provision. However, plaintiff mischaracterizes defendant's conduct and the language of § 3. The condition precedent required that the tenant not be in default. In other words, the very *condition itself* was that the tenant should not be in default. Therefore, it is unpersuasive for plaintiff to argue that being in default, which is the *very condition* contemplated by the condition precedent itself, somehow constituted interference with the condition precedent. Being in default was not an affirmative action or refusal to take a required action under the Lease, see *id*. at 132; rather, being in default was simply the condition itself not being fulfilled, see *id*. at 131. Interference with a condition precedent necessarily involves some conduct outside the language of the condition itself.

Next, plaintiff contends that it could unilaterally waive the default provision. We disagree.

-4-

Generally, parties "are free to *mutually* waive or modify their contract . . . because of the freedom to contract." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364; 666 NW2d 251 (2003). However, "the principle of freedom to contract does not permit a party *unilaterally* to alter the original contract. Accordingly, mutuality is the centerpiece to waiving or modifying a contract, just as mutuality is the centerpiece to forming any contract." *Id*. Nonetheless, we have previously held that a party may unilaterally waive a condition precedent if that condition precedent is permissive, not mandatory, and solely benefits that party. See *Brotman v Roelofs*, 70 Mich App 719, 724-725; 246 NW2d 368 (1976); *Bliss v Carter*, 26 Mich App 177, 181-182; 182 NW2d 54 (1970).[4]

However, in the present case, the condition precedent within the default provision was mandatory, not permissive. Nothing about § 3 denoted that the "not being in default" condition was permissive. Instead, it required that the tenant be given the option to renew the Lease only *if* it was not in default. If the tenant was in default, the tenant was not given the option to renew, which necessarily meant the Lease would not automatically renew. Moreover, § 3 was explicitly "subject to" § 3.2, which contained the specifics of the Lease's autorenewal. This autorenewal was explicitly referred to as the "tenant's option," which was a reference back to the language in § 3 about the tenant having the option to renew the Lease *if* not in default. Reading these provisions as a whole, the renewal option of the Lease was not simply an automatic renewal provision, but rather, was a renewal option at the discretion of the tenant. The tenant had discretion whether to exercise it or not, and, by taking no action, this operated as an exercise of the option. However, the tenant's discretion was expressly *limited* by its default status. If it was in default, it did *not* have the option to renew, thereby preventing both §§ 3 and 3.2 from triggering. This shows that the condition precedent in the default provision was mandatory, not permissive, and plaintiff could not unilaterally waive this provision.

Plaintiff argues that there was at least a question of fact regarding whether defendant had been in default. We disagree.

Section 3 contained only two requirements for a default: (1) notice and (2) expiration of any applicable cure period. There were two cure periods set forth by § 17.1: 10 days for failure to pay rent, and 30 days for any other obligation (or a reasonable amount of time if the default was the type that could not be cured within 30 days). There is no indication that the default in this case was the type for which 30 days was improper and for which a reasonable amount of time to cure would apply. The parties make no argument to the contrary. Therefore, we will use the 10- and 30-day periods. There was no dispute that plaintiff sent written notice of default to defendant on two occasions: one on April 16, 2019, and the other on June 21, 2019. Therefore, the first requirement of § 3 was met. Next, defendant sent a formal response contesting whether it was liable for fees or costs prior to its assignment of the Lease, but it acknowledged liability for fees

---

[4] Published decisions issued by this Court on or after November 1, 1990, are precedentially binding. MCR 7.215(J)(1). Although we are "not *strictly required* to follow uncontradicted opinions from this Court decided before November 1, 1990, . . . they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

-5-

and costs after its assignment. However, other than this response, there was no evidence showing that defendant ever cured the default either within 10 or 30 days of either notice. Therefore, the second requirement of § 3 was met. Contrary to plaintiff's contentions, there were no other requirements for default.

Finally, plaintiff contends that equitable estoppel precluded defendant from claiming it was not in default. We disagree.

"Equitable estoppel is not an independent cause of action, but rather a doctrine that may assist a party by preventing the opposing party from asserting or denying the existence of a particular fact." *West American*, 230 Mich App at 309-310. In order for equitable estoppel to apply, a party must show three elements: "(1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *Id*. at 310. However, in order for silence or inaction to support application of equitable estoppel, "the silent party [must have] had a duty or obligation to speak or take action." *Id*.

Plaintiff's position is premised entirely on defendant supposedly denying that it was in default, which allegedly caused plaintiff to rely on such denial to its own detriment. However, an examination of the parties' correspondence showcases the opposite. Plaintiff sent two notices of default. In its response, defendant made clear that it disputed *only* its liability regarding fees and costs prior to its assignment of the Lease. Defendant *conceded* that it was liable for the fees and costs after assignment, and it requested information on the amounts owed. In other words, rather than deny being in default, defendant conceded that it was in default. Defendant merely disputed the *scope* of its default—it did not believe it was liable for fees or costs prior to assignment but conceded that it was liable for such things after assignment. Therefore, the entire basis for plaintiff's equitable estoppel claim fails.

### III. CONCLUSION

Under the Lease's plain language, by being in default, defendant lost the option to renew the Lease for an additional five years. Accordingly, the Lease expired on January 31, 2020, under its terms. Defendant could not have committed breach of contract, thereby entitling it to judgment as a matter of law. Furthermore, because there was no evidence that defendant denied being in default, plaintiff's equitable estoppel claim was untenable. Consequently, the trial court did not err by denying partial summary disposition to plaintiff under MCR 2.116(I)(2) and by granting partial summary disposition to defendant under MCR 2.116(C)(10).

Affirmed. Defendant, having prevailed in full, may tax costs under MCR 7.219(F).

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett